NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0778-11T2
            A-0779-11T2
            A-4912-11T2
            A-4913-11T2

ELBERT HUGHES,

     Plaintiff-Appellant,

v.

A.W. CHESTERTON CO.; BRAND
INSULATIONS, INC; FOSTER
WHEELER CORP.; GARLOCK,
INC.; METROPOLITAN LIFE;
WESTINGHOUSE ELECTRIC CORP.;
DURAMETALLIC CORP.; GENERAL
ELECTRIC CO., and MELRATH
GASKET & SUPPLY,

     Defendants,

and

GOULDS PUMPS, INC.,

     Defendant-Respondent.

| APPROVED FOR PUBLICATION |
| :---: |
| **April 23, 2014** |
| **APPELLATE DIVISION** |

_____

MICHAEL GREEVER,

     Plaintiff-Appellant,

v.

A.W. CHESTERTON CO.; BRAND
INSULATIONS, INC; FOSTER
WHEELER CORP.; GARLOCK, INC.;
METROPOLITAN LIFE; HOPEMAN
BROTHERS, INC.; INGERSOLL-RAND

CO. LTD.; MADSEN & HOWELL,
INC.; DURAMETALLIC CORP.;
WOOLSULATE CORP.; GENERAL
ELECTRIC CO.; and MELRATH
GASKET & SUPPLY,

     Defendants,

and

GOULDS PUMPS, INC.,

     Defendant-Respondent.

_____

GREGORY FAYER, Executor of
the Estate of THOMAS FAYER,
Deceased,

     Plaintiff-Appellant,

v.

A.W. CHESTERTON CO.; BRAND
INSULATIONS, INC; DURAMETALLIC
CORP.; FOSTER WHEELER CORP.;
GENERAL ELECTRIC CO.; METROPOLITAN
LIFE; OWENS-ILLINOIS, INC.; HOPEMAN
BROTHERS, INC.; MADSEN & HOWELL,
INC.; WOOLSULATE CORP.; and
INGERSOLL-RAND CO. LTD.,

     Defendants,

and

GOULDS PUMPS, INC.,

     Defendant-Respondent.

_____

ANGELO MYSTRENA and
KATHLEEN MYSTRENA,

A-0778-11T2

Plaintiffs-Appellants,

v.

A.W. CHESTERTON CO.; BRAND
INSULATIONS, INC; DURAMETALLIC
CORP.; FOSTER WHEELER CORP.;
METROPOLITAN LIFE; HOPEMAN BROTHERS,
INC.; MADSEN & HOWELL, INC.; WOOLSULATE
CORP.; and INGERSOLL-RAND CO. LTD.,

Defendants,

and

GOULDS PUMPS, INC.,

Defendant-Respondent.

Argued September 17, 2013 — Decided April 23, 2014

Before Judges Fisher, Espinosa and Koblitz.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-5671-08, L-10779-08, L-5016-10, and L-4208-10.

Franklin P. Solomon argued the cause for appellants (Locks Law Firm, LLC, attorneys; Mr. Solomon and James J. Pettit, on the briefs).

Richard J. Mirra and Steven F. Satz argued the cause for respondent (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Mr. Mirra and Mr. Satz, of counsel and on the briefs).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

In these consolidated cases, we consider whether a manufacturer has a duty to warn that component parts, which will be regularly replaced as part of routine maintenance, contain asbestos. Under the facts of this case, we find it would be reasonable, practical and feasible to impose such a duty here. However, we also reject plaintiffs' argument that causation may be proved by proximity to defendant's product in the absence of proof they were exposed to an asbestos-containing product manufactured or sold by defendant and, therefore, conclude plaintiffs failed to make a prima facie showing of causation.

Plaintiffs Michael Greever, Elbert Hughes, Thomas Fayer,[1] and Angelo Mystrena (collectively plaintiffs) appeal from orders that granted summary judgment to defendant Goulds Pumps, Inc. (Goulds), dismissing their claims with prejudice. The claims arise from plaintiffs' allegations that they contracted asbestos-related diseases as a result of their exposure to asbestos contained in component parts of pumps manufactured by Goulds.[2]

---

[1]  Thomas Fayer's son, Gregory Fayer, brings this appeal on his late father's behalf.

[2]  Thomas Fayer, a member of the Asbestos Workers Union, Local 14, was diagnosed with lung cancer in July 2009 and died in January 2010 at the age of eighty-one. Angelo Mystrena, a member of the International Association of Heat and Frost Insulators and Asbestos Workers, Local 89, was diagnosed with
Footnote continued on next page.

A-0778-11T2

The facts are largely undisputed. The majority of the pumps manufactured by Goulds until 1985 contained asbestos in their gaskets and packing. Because the pumps have a long useful life, Goulds knew, at the time it introduced the pumps into the marketplace, that these asbestos-containing parts would have to be replaced as part of routine maintenance. By the time plaintiffs worked in proximity to Goulds pumps, the original gaskets and packing had been replaced, and it is unknown who manufactured or supplied the replacement gaskets and packing.

All plaintiffs alleged that Goulds is strictly liable for its failure to warn because it was foreseeable that asbestos-containing products would be used when the gaskets and packing were replaced. In addition, Fayer and Mystrena assert that Goulds is liable on common law negligence grounds. Goulds submits that plaintiffs failed to show they were exposed to friable asbestos from a product it had manufactured, distributed, sold, or supplied and that this failure was fatal to their ability to present a prima facie case that Goulds was strictly liable. In addition, Goulds argues that strict liability principles are limited to those in the chain of distribution of the product that caused harm.

asbestosis in December 2009. Greever and Hughes allege they suffer from asbestos-related pulmonary disease.

We review the orders granting summary judgment using the same standard as the trial court, <u>Coyne v. N.J. Dep't of Transp.</u>, 182 <u>N.J.</u> 481, 491 (2005), viewing the evidence in the light most favorable to plaintiffs to determine whether there is any genuine issue of material fact that precludes judgment in favor of defendant as a matter of law. <u>R.</u> 4:46-2(c); <u>see also</u> <u>Brill v. Guardian Life Ins. Co.</u>, 142 <u>N.J.</u> 520, 540 (1995). The circumstances of this case suggest that Goulds had a duty to warn that component parts of its pumps contained asbestos. However, despite drawing reasonable inferences from the record in the light most favorable to plaintiffs, we also conclude that summary judgment was properly granted here because plaintiffs failed to make a prima facie showing of causation.

I

Goulds filed summary judgment motions in the Hughes and Greever cases in August 2011. In support of its motions for summary judgment,[3] Goulds argued each plaintiff failed to present evidence he was exposed to asbestos products it had manufactured, distributed, or supplied at all, "let alone with frequency, regularity and proximity" sufficient to meet the

---

[3] The briefs in the Greever and Hughes matters were submitted pursuant to <u>Rule</u> 2:6-1(a)(2). The motion briefs in the other cases are not part of the record before us.

standard adopted in <u>Sholtis v. Am. Cyanamid Co.</u>, 238 <u>N.J. Super.</u> 8, 28-29 (App. Div. 1989).

In granting summary judgment, the trial court noted, "obviously" plaintiff[4] "worked on Goulds Pumps" but stated,

> there's absolutely zero proof that Gould[s] supplied, manufactured, or anything, the replacement gaskets and packing, so what this fellow may have been exposed to was a product manufactured and sold by someone else.

Plaintiff's counsel agreed but argued that Goulds should be strictly liable for its failure to provide a warning because the original component parts contained asbestos, the component parts were necessary parts of the pumps, and, for much of the time thereafter, the majority of replacement parts available contained asbestos. The court stated summary judgment would have been denied if there was proof Goulds required the use of replacement parts that contained asbestos. However, the court concluded summary judgment was appropriate as to both plaintiffs' products liability and negligence claims in the absence of such proof or evidence the replacement component parts were manufactured or sold by Goulds.

---

[4] The transcript of oral argument of the Greever motion has been supplied, and plaintiff Hughes represents that the oral arguments of the Hughes and Greever motions were conducted back to back. No separate transcript of the Hughes oral argument has been supplied as part of the record here.

A-0778-11T2

In November 2011, Goulds filed a motion for summary judgment in the Fayer and Mystrena matters. In support of its motions, Goulds again asserted that each of the plaintiffs had failed to present evidence "he was exposed to friable asbestos manufactured, distributed and/or supplied by" Goulds. Although plaintiffs disputed this assertion, they concede in their appellate briefs that the manufacturers of the replacement parts in use when they worked in proximity to Goulds pumps cannot be identified.

The trial court granted summary judgment in the Fayer and Mystrena cases. In its written decision, the court identified the issue as "Goulds's liability for failure to warn in connection with exposure to asbestos-containing replacement parts that it did not specify, require, manufacture, sell, supply or distribute." The court noted the replacement parts were installed "five, 10, 20 and even 30 years after the sale of the pumps or other devices" and that "the asbestos replacement parts were not specified by the manufacturer nor were they required for the operation of the device." The court concluded that because long-standing New Jersey law requires the defect to exist when the product leaves the defendant's control, liability should be limited to those defendants in the chain of distribution of the defective product.

8

In their appeal, plaintiffs Hughes and Greever argue that the trial court erred in granting summary judgment on "product identification," "component part liability," and on a theory allegedly raised by the court sua sponte. Plaintiffs Fayer and Mystrena argue Goulds is strictly liable for its failure to warn of the asbestos hazard inherent in its product through the life of the product, citing support for this argument from other jurisdictions; Goulds is liable in negligence.

II

The Product Liability Act (PLA), N.J.S.A. 2A:-58(c)-1 to - 11, "generally 'leaves unchanged the . . . theories under which a manufacturer . . . may be held strictly liable for harm caused by a product,'" serving the Legislature's intent "that the common law should fill the interstices left by the terms of the Act." Jurado v. W. Gear Works, 131 N.J. 375, 384 (1993) (internal citation omitted); see Senate Judiciary Committee, Statement to Senate Committee Substitute for S. 2805 (Mar. 23, 1987).[5] Moreover, because the asbestos claims asserted here fall

_____

[5] In addition, the legislative committee and sponsor statements with regard to all product liability causes of action make clear that warning defect cases are still largely governed by the common law. See, e.g., Assembly Insurance Committee, Statement to Senate Committee Substitute for S. 2805 (June 22, 1987); Sponsor's Statement to S. 2805 (Nov. 17, 1986).

within the environmental tort exception[6] to the PLA, <u>N.J.S.A.</u> 2A:58C-6, <u>In re Lead Paint Litigation</u>, 191 <u>N.J.</u> 405, 439 (2007); <u>Stevenson v. Keene Corp.</u>, 131 <u>N.J.</u> 393, 395-96 (1993), common law principles apply. As a result, plaintiffs' products liability action "may rest on grounds of negligence, strict liability, or both." <u>James v. Bessemer Processing Co.</u>, 155 <u>N.J.</u> 279, 295-96 (1998). The most significant distinction between the two causes of action is that, in a strict liability case, it is presumed the seller "knew of the product's propensity to injure as it did" while in the ordinary negligence case "such knowledge must be proved; the standard is what the manufacturer 'knew or should have known.'" <u>Id.</u> at 296 (quoting <u>Freund v. Cellofilm Props., Inc.</u>, 87 <u>N.J.</u> 229, 239 (1981)); <u>see also</u> <u>Promaulayko v. Johns Manville Sales Corp.</u>, 116 <u>N.J.</u> 505, 509-10 (1989).

A strict liability claim requires proof "'that the product was defective, that the defect existed when the product left the defendant's control, and that the defect caused injury to a reasonably foreseeable user.'" <u>Zaza v. Marquess & Nell</u>, 144

---

[6] <u>N.J.S.A.</u> 2A:58C-1(b)(4) defines such action as "a civil action seeking damages for harm where the cause of the harm is exposure to toxic chemicals or substances, but does not mean actions involving drugs or products intended for personal consumption or use."

N.J. 34, 49 (1996) (quoting <u>Feldman v. Lederle Labs.</u>, 97 <u>N.J.</u> 429, 449 (1984)).  As alleged here, the defect is "the failure to warn unsuspecting users that the product can potentially cause injury."  <u>Id.</u> at 57.

The analysis of whether strict liability applies thus begins with the assumption the manufacturer or seller knew of the product's defect and then proceeds to "the ultimate question . . . whether the manufacturer acted in a reasonably prudent manner" as of the time the product was introduced into the marketplace.  <u>Id.</u> at 49-50; <u>Fischer v. Johns-Manville Corp.</u>, 103 <u>N.J.</u> 643, 654 (1986); <u>Feldman</u>, <u>supra</u>, 97 <u>N.J.</u> at 450-51; <u>Green v. General Motors Corp.</u>, 310 <u>N.J. Super.</u> 507, 516 (App. Div.), <u>certif. denied</u>, 156 <u>N.J.</u> 381 (1998).  A defendant satisfies its obligation by proving it "acted in a reasonably prudent manner in marketing the product or in providing the warnings given." <u>Feldman</u>, <u>supra</u>, 97 <u>N.J.</u> at 451.

The mere absence of a warning on an asbestos-containing product does not render the product defective.  Despite the "unique problems in litigation" presented by asbestos cases, <u>Provini v. Asbestospray Corp.</u>, 360 <u>N.J. Super.</u> 234, 237-38 (App. Div. 2003), "[o]ur courts have acknowledged that asbestos-containing products are not uniformly dangerous and thus" it should not be presumed that all such products "pose the same

risks about which the users of those products must be warned, regardless of the differences in those products." Becker v. Baron Bros., 138 N.J. 145, 159-61 (1994); see also James, supra, 155 N.J. at 309-10. Because "the term 'asbestos-containing products' describes a variety of materials with differing amounts of asbestos and different built-in safeguards," Becker, supra, 138 N.J. at 160, the "analysis should focus on the specific product before the court." Id. at 159. The Court explicitly rejected the notion that "any friction product that contains asbestos is defective if it does not contain a warning." Id. at 154.

The plaintiff in an asbestos failure to warn case must also prove two types of causation: product-defect causation and medical causation. Product-defect causation requires proof that the defect — here, a failure to warn — existed when the product left the defendant's control and that the absence of a warning caused injury to a reasonably foreseeable user.[7] James, supra, 155 N.J. at 296; Becker, supra, 138 N.J. at 152; Coffman, supra, 133 N.J. at 593-95; Goss v. Am. Cyanamid, Co., 278 N.J. Super. 227, 235-37 (App. Div. 1994). To present a prima facie case of

---

[7] We presume that, if a warning had been provided, plaintiffs would have heeded the warning. Coffman v. Keene Corp., 133 N.J. 581, 603 (1993).

medical causation, a plaintiff must satisfy the "frequency, regularity and proximity" test we adopted in Sholtis, supra, 238 N.J. Super. at 28-29.

## III

We first address the question whether Goulds had a duty to provide a warning here.[8] In Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982), the Court stated, "Under New Jersey law, manufacturers, as well as all subsequent parties in the chain of distribution, are strictly liable for damages caused by defectively designed products." Ibid. In Promaulayko, supra, 116 N.J. at 511, the Court expressly included distributors and retailers who "may be innocent conduits in the sale of the defective product" as subject to liability. Relying upon such principles, Goulds argues that it owed no duty to plaintiffs who were allegedly harmed by replacement parts because it was not in the "chain of distribution" of those parts. We view Goulds's interpretation of the "chain of distribution" as unduly limited when applied to the facts of this case.

A warning is intended to reduce the risk from a product "to the greatest extent possible without hindering its utility."

---

[8] Because this case is not governed by the PLA, our analysis is not limited by the statutory definitions for parties who may be held liable. See N.J.S.A. 2A:58C-8.

Beshada v. Johns-Manville Prods. Corp., 90 N.J. 191, 201 (1982). The duty to warn requires a manufacturer or supplier of products to "take reasonable steps to ensure that its warning reaches" the employees who will use the product in question. Coffman, supra, 133 N.J. at 606. Such reasonable steps may include: providing a warning to persons other than the ultimate user, see, e.g., Michalko, supra, 91 N.J. at 402 (holding it may be necessary for the manufacturer or seller to provide a warning to both the employer and the employee who uses an unsafe product so the employer is aware of the need to alert employees to the danger posed); see also Davis v. Wyeth Labs, Inc., 399 F.2d 121, 131 (9th Cir. 1968) (holding drug manufacturer had duty to ensure that warnings of drug's risks reached both doctor and consumer); may extend to products it has not placed in the stream of commerce, see, e.g., Molino v. B.F. Goodrich Co., 261 N.J. Super. 85, 93 (App. Div. 1992), certif. denied, 134 N.J. 482 (1993); Seeley v. Cincinnati Shaper Co., Ltd., 256 N.J. Super. 1, 18 (App. Div.), certif. denied, 130 N.J. 598 (1992); see also Macias v. Saberhagen Holdings, Inc., 282 P.3d 1069, 1076-77 (Wash. 2012) (finding, based upon "the general rule that a manufacturer in the chain of distribution is subject to liability for failure to warn of the hazards associated with use of its own products," that defendants could be strictly liable

A-0778-11T2

because "when the products were used exactly as intended and cleaned for reuse exactly as intended they <u>inherently</u> and invariably posed the danger of exposure to asbestos"); and, when a manufacturer learns of dangers associated with its product after the product has left its control, may require the issuance of warnings thereafter. <u>Molino</u>, <u>supra</u>, 261 <u>N.J. Super.</u> at 93.

As we have noted, the nature of the product is an important factor in assessing the reasonableness of defendant's conduct in failing to provide a warning. It is undisputed that the pump as originally marketed had gaskets and packing that contained asbestos. However, the parties disagree as to whether this made the pump dangerous. <u>See</u> <u>Becker</u>, <u>supra</u>, 138 <u>N.J.</u> at 158-59 (finding that a jury question was presented by conflicting expert testimony regarding the risk posed by processed chrysotile asbestos).

Eugene Bradshaw, Goulds's corporate designee, testified it was reasonable for Goulds to conclude there were no risks associated with the asbestos components because the gasket is contained between metal parts and the packing "contains rubberizing gumming things, and it's lubricated when it's being used." However, plaintiffs presented evidence that workers were exposed to asbestos when the gaskets and packing were replaced. Like his father, Thomas, Gregory Fayer was a member of the

Asbestos Workers Union, Local 14, and worked as an insulator. He supplied a certification in which he recounted his personal observations of such replacements and stated, "[t]he dust from removing old gaskets and cutting and fitting new gaskets in Goulds pumps and the dust from pulling out old packing and stuffing in new packing in Goulds pumps, was visible, and was in the air where Thomas Fayer was working."

Although we have little evidence from the record regarding the specific dangers posed by the asbestos contained within the replacement parts, plaintiffs are entitled to the inference that the replacement of gaskets and packing posed a risk of asbestos exposure to workers in proximity to the replacement work. See Becker, supra, 138 N.J. at 165 (predicting that "products-liability-case defendants will rarely, if ever, be able to produce any evidence demonstrating that a dangerous asbestos product marketed without a warning . . . is not defective."). Under a strict liability analysis, Goulds is presumed to know of any danger its product, which included the asbestos-containing components, posed to users. James, supra, 155 N.J. at 296.

Proceeding on the assumption that the lack of a warning rendered the original pump dangerous when it entered the marketplace, we turn to determining the foreseeable users and uses of the product. See Campos v. Firestone Tire & Rubber Co.,

98 <u>N.J.</u> 198, 206 (1984) ("Generally, the duty to warn extends only to foreseeable users of the product and to uses that reasonably should have been objectively anticipated.")

Plainly, when a manufacturer <u>requires</u> the use of a component part, the danger posed by that replacement part is reasonably anticipated. See <u>Molino</u>, <u>supra</u>, 261 <u>N.J. Super.</u> at 93-94. Further, when the danger posed by a product was "inherent in the machine as originally manufactured" and the specific replacements "could reasonably have been contemplated," we held that the mere replacement of major components in a machine will not absolve the manufacturer of a duty to warn. <u>Seeley</u>, <u>supra</u>, 256 <u>N.J. Super.</u> at 18. But see <u>Surre v. Foster Wheeler LLC</u>, 831 <u>F. Supp.</u> 2d 797, 800-01 (S.D.N.Y. 2011) (addressing question whether a manufacturer had "a duty to warn against the dangers of a third party's product that <u>might</u> be used in conjunction with its own" and observing that, generally, no duty arises if the manufacturer "had no control over the production of the defective product[,] did not place it into the stream of commerce[,] . . . and played no part in selecting the defective product") (emphasis added).

In this case, asbestos-containing gaskets and packing posed an inherent danger in the pumps as originally manufactured. The fact that these component parts would be replaced regularly as

part of routine maintenance did not absolve Goulds of any duty to warn because it was reasonably foreseeable that these components would be replaced as part of regular maintenance. See Seeley, supra, 256 N.J. Super. at 18; Ridenour v. Bat Em Out, 309 N.J. Super. 634, 642-43 (App. Div. 1998) (holding that because reasonably anticipated use includes foreseeable misuse, a duty exists to warn against foreseeable misuses of a product).

Although Goulds did not require that either the original gaskets and packing or their replacements contain asbestos, its corporate designee was unaware of any substitutes for asbestos for the components in Gould's pumps until the late 1960s or early 70s. Therefore, it was reasonably foreseeable, at the time the pumps were placed into the marketplace, that the gaskets and packing would be replaced regularly with gaskets and packing that contained asbestos. Goulds could not rely upon plaintiffs' employers or others responsible for the replacement parts to issue a warning to employees because the duty to warn is nondelegable. See Beadling v. William Bowman Assocs., 355 N.J. Super. 70, 88 (App. Div. 2002). As a result, the foreseeable class of users included not only those workers who came into contact with the pumps as originally manufactured, but also those workers who came into contact with the component

parts as part of regular maintenance.  Plaintiffs fall within this latter class.

Foreseeability of harm is "'a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate.'"  Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996) (quoting Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc., 135 N.J. 182, 194 (1994)).  However, although an important consideration, foreseeability of injury is not dispositive.  Estate of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 317 (2013); Kuzmicz v. Ivy Hill Park Apts., 147 N.J. 510, 515 (1997).  Even when it has been determined that harm to a particular individual is foreseeable, "considerations of fairness and policy govern whether the imposition of a duty is warranted."  Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 401-03 (2006) (citing Carter Lincoln-Mercury, supra, 135 N.J. at 194-95).  We conduct our inquiry "in light of the actual relationship between the parties under all of the surrounding circumstances," Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 438 (1993), to determine "whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy."  Id. at 439.

"The overriding goal of strict products liability is to protect consumers and promote product safety," Fischer, supra, 103 N.J. at 657. In Becker, supra, 138 N.J. at 165-166, the Supreme Court noted the following observation with approval:

> Experience demonstrates that an asbestos-related product is unsafe because a warning could have made it safer at virtually no added cost and without limiting its utility. Indisputably, a warning would have lessened exposure and avoided countless injuries.
>
> [Ibid. (quoting Campolongo v. Celotex Corp., 681 F. Supp. 261, 264 (D.N.J. 1988)).]

Mindful that the purpose of a warning is to reduce the risk of a product "to the greatest extent possible without hindering its utility," Beshada, supra, 90 N.J. at 201, we also assume that the cost of including a warning when the pump is originally marketed would have "but a slight impact on the risk-utility analysis, since such cost would generally have little, if any, effect on a product's utility," Campos, supra, 98 N.J. at 207, and that the manufacturer has the capacity to include any attendant additional cost to purchasers as needed.

In Zaza, supra, 144 N.J. at 50, the Court considered whether the duty to install safety devices should be imposed when the "finished product is the result of work by more than one party." The Court stated, "a court must examine at what stage installation of safety devices is feasible and

practicable."  <u>Ibid.</u>  That reasoning is equally apt in considering whether there should be a duty to warn at the initial marketing stage here.

We note that imposing a duty to warn at that stage is more likely to affect the entire class of foreseeable users than at any other time in the life of the pump. Since the risk of exposure continued and was perhaps increased by the replacement process, a warning given at the time of the initial sale would ensure that this information was available to be considered in subsequent decisions regarding the choice of replacement parts and any additional safeguards for workers who made the replacements. We therefore conclude that it would be reasonable, practical, and feasible to impose a duty to warn upon Goulds under the facts here.

IV

Generally, the most difficult problem for plaintiffs in toxic tort cases is the burden of proving causation. <u>See</u> <u>Ayers v. Jackson Twp.</u>, 106 <u>N.J.</u> 557, 585 (1987). Summary judgment was appropriate here because plaintiffs failed to satisfy that burden.

The <u>Sholtis</u> causation standard was first pronounced in <u>Lohrmann v. Pittsburgh Corning Corp.</u>, 782 <u>F.</u>2d 1156, 1162-63 (4th Cir. 1986). <u>See, e.g.</u>, <u>James</u>, <u>supra</u>, 155 <u>N.J.</u> at 300-03;

Vassallo v. Am. Coding & Marking Ink. Co., 345 N.J. Super. 207, 215-16 (App. Div. 2001). "To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann, supra, 782 F.2d at 1162-63. These factors "should be balanced for a jury to find liability." Sholtis, supra, 238 N.J. Super. at 28. The purpose for this stringent standard was for liability to be assigned "only to those defendants to whose products the plaintiff can demonstrate he or she was intensely exposed." James, supra, 155 N.J. at 302-03. Therefore, in opposing summary judgment, plaintiffs were required to "produce evidence from which a fact-finder, after assessing the proof of frequency and intensity of plaintiff's contacts with a particular manufacturer's friable asbestos, could reasonably infer toxic exposure." Sholtis, supra, 238 N.J. Super. at 29 (emphasis added).

Proof of direct contact "is almost always lacking," James, supra, 155 N.J. at 301 (quoting Sholtis, supra, 238 N.J. Super. at 29), and need not be proven by direct evidence of asbestos exposure. Goss, supra, 278 N.J. Super. at 236. A plaintiff may "rely upon circumstantial proof of sufficiently intense

22

exposure," generally accompanied by expert proof,[9] to warrant the imposition of liability. James, supra, 155 N.J. at 301-02 (quoting Sholtis, supra, 238 N.J. Super. at 29); see also Kurak v. A.P. Green Refactories Co., 298 N.J. Super. 304, 314 (App. Div.), certif. denied, 152 N.J. 10 (1997).

Still, liability should not be imposed on mere guesswork. Provini, supra, 360 N.J. Super. at 237-38. "Industry should not be saddled with . . . open-ended exposure based upon 'a casual or minimum contact.'" Sholtis, supra, 238 N.J. Super. at 29 (quoting Lohrmann, supra, 782 F.2d at 1162). Even if plaintiffs are able to show that asbestos-containing products supplied by defendant "were in use at the plant," such evidence is insufficient for the imposition of strict liability "without actual proof linking the exposures of [plaintiffs] to those products." Goss, supra, 278 N.J. Super. at 236. Plaintiffs must prove "that each of them were exposed to the asbestos from those specific products frequently, on a regular basis, and with sufficient proximity so as to demonstrate the requisite causal

---

[9] To satisfy the standard, "[e]xpert proof would usually be required to establish, even inferentially, that the exposures caused or exacerbated plaintiffs' eventual injuries. This proof would be in addition to the expert proof of the asbestos-related injury itself." Sholtis, supra, 238 N.J. Super. at 29 n.16; see also Vassallo, supra, 345 N.J. Super. at 215-16. The record before us does not disclose if plaintiffs submitted such expert evidence.

connection between the exposure and plaintiffs' illnesses." Id. at 236-37.

We have required that plaintiffs present proof the injured party has had such exposure to specific products manufactured or sold by the defendant. For example, in Vassallo, supra, 345 N.J. Super. at 215-16, we found plaintiff had presented proof "she was regularly and frequently exposed to Resisto marking ink," the defendant's product, which made her ill. In contrast, in Provini, supra, 360 N.J. Super. at 237-238, we affirmed an order granting summary judgment where plaintiff was unable to prove the decedent was ever exposed to the asbestos-containing product during his employment, rejecting the argument that it should be assumed he was exposed because the product was used by his employer during the time he was employed. See also Kurak, supra, 298 N.J. Super. at 315-22 (reviewing cases in which evidence of exposure was found sufficient and insufficient).

Plaintiffs argue they demonstrated the requisite contact to survive summary judgment by showing they had sufficient contact with Goulds pumps, without regard to what contact they had with the component parts that allegedly caused their injuries. While it is true that the alleged defect in the pump was a failure to warn, it is also true that plaintiffs allege they were injured by asbestos contained in parts that were replaced long after the

24                                                    A-0778-11T2

pumps left Goulds's control. We do not agree that plaintiffs may prove causation by showing exposure to a product without also showing exposure to an injury-producing element in the product that was manufactured or sold by defendant. If that were the case, a manufacturer or seller who failed to give a warning could be strictly liable for alleged injuries long after the product entered the marketplace even if the injury-producing element of the product no longer existed. The imposition of liability based upon such proofs would rest upon no more than mere guesswork, Provini, supra, 360 N.J. Super. at 238, and would fail to limit liability "only to those defendants to whose products the plaintiff can demonstrate he or she was intensely exposed." James, supra, 155 N.J. at 302-03.

Plaintiffs concede they are unable to identify the manufacturer or seller of the replacement parts that allegedly made them ill. Because they failed to produce evidence they had any contact with friable asbestos in replacement parts that were manufactured or sold by Goulds, summary judgment was appropriate. See Sholtis, supra, 238 N.J. Super. at 29.

V

Plaintiffs Fayer and Mystrena also argue that their negligence claims against Goulds should have survived summary judgment. We disagree.

Although common law negligence is an available cause of action to product liability plaintiffs, the Supreme Court has recognized that "strict liability was more appropriate than negligence doctrine for resolution of inadequate warning cases." Coffman, supra, 133 N.J. at 598 (citing Freund, supra, 87 N.J. at 237). Moreover, a negligence claim requires proof that defendant knew or should have known that the failure to warn had the propensity to injure these plaintiffs. Freund, supra, 87 N.J. at 239. Because plaintiffs failed to present such proof, summary judgment was properly granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0778-11T2