NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2300-15T4

THOMASINA FOWLER, individually
and as administrator and
administrator ad prosequendum
of the estate of WILLIS EDENFIELD,

 Plaintiff-Appellant,

v.

AKZO NOBEL CHEMICALS, INC., AS
SUCCESSOR TO IMPERIAL CHEMICAL
INDUSTRIES PLC AND NATIONAL STARCH
AND CHEMICAL CO.; CORN PRODUCTS
INTERNATIONAL INC., AS SUCCESSOR
TO NATIONAL STARCH AND CHEMICALS
CO.; HENKEL CORPORATION,
INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO THE ADHESIVE AND
ELECTRONICS DIVISION OF NATIONAL
STANDARD CHEMICHAL CO.; NATIONAL
STARCH, L.L.C., INDIVIDUALLY AND
AS SUCCESSOR TO NATIONAL STARCH
AND CHEMICAL CO.,

 Defendants,

and

UNION CARBIDE CORPORATION,

 Defendant-Respondent.
___________________________________
 Argued March 23, 2017 – Decided May 17, 2017

 Before Judges O'Connor and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Docket No. L-
 4820-11.

 Robert E. Lytle argued the cause for appellant
 (Szaferman, Lakind, Blumstein & Blader, P.C.,
 and Levy Konigsberg, L.L.P., attorneys; Mr.
 Lytle and Jeffrey P. Blumstein, on the
 briefs).

 Richard D. Picini argued the cause for
 respondent (Caruso Smith Picini, attorneys;
 Mr. Picini, on the brief).

PER CURIAM

 In October 2010, decedent Willis Edenfield, received a

diagnosis of mesothelioma as a result of workplace exposure to

asbestos and succumbed to his illness three months later.

Following his death, plaintiff, decedent's widow, brought a

wrongful death and product liability action against defendant

Union Carbide Corporation (UCC) and other parties on behalf of the

decedent's estate. The lawsuit was filed after decedent died, and

he was never deposed. Plaintiff appeals from the trial court's

December 23, 2015 order granting summary judgment to UCC. Because

we are satisfied plaintiff presented sufficient evidence that a

reasonable jury could infer decedent suffered asbestos exposure

from defendant's products, we reverse.

 2 A-2300-15T4
 Decedent worked at a chemical plant in Bloomfield from 1954

to 1994, which manufactured asbestos-containing adhesive products.

UCC supplied Calidria asbestos to this facility from 1970 to 1982.

From 1970 to 1971, UCC delivered at least 1550 pounds of a specific

type of asbestos to the Bloomfield facility, and from 1971 to

1982, UCC delivered 36,823 pounds of another type of asbestos to

the location.

 During discovery, two of the decedent's former coworkers,

Lucius Boyd and Rodney Dover, testified regarding decedent's job

and the conditions at the facility. The facility contained a six-

building compound. Asbestos-containing products were manufactured

there. Various companies, including UCC, supplied asbestos to the

facility's receiving department, and the facility then stored the

asbestos in the warehouse. Decedent retrieved powdered materials,

including asbestos, by scooping it out and placing it in bags

before taking the material to work locations. Decedent worked in

the mill room connected to the asbestos warehouse.

 Dover testified he saw two types of asbestos in the facility.

He remembered seeing bags with "John Mansville" on them that also

said "asbestos." Dover did not remember the other asbestos

providers. However, he recalled UCC provided materials to the

company. Dover observed decedent using asbestos in the mill room

and knew decedent was using asbestos. Dover stated "some of the

 3 A-2300-15T4
products we milled had asbestos in them," and "at that point

[Dover] knew what asbestos was." In the mill room, decedent

scooped, weighed, and mixed the necessary ingredients, including

asbestos. The air of the mill room contained visible dust, and

the decedent wore a mask while he worked for this reason.

 Boyd worked at the facility from 1956-1964, outside the time

UCC provided the facility with asbestos. Boyd testified decedent

worked in the powder room with him during the period they both

worked there. Boyd testified he "assume[d]" the company used

asbestos when he worked there. He recalled seeing packaging that

said "asbestos" on more than one occasion but did not recall where.

 Following the completion of discovery, UCC moved for summary

judgment, which the trial court granted, finding insufficient

evidence the decedent was exposed to UCC's asbestos while working

at the Bloomfield facility. This appeal followed.

 On appeal, plaintiff argues the summary judgment order should

be vacated because "the evidence is sufficient to create a genuine

issue of material fact as to whether decedent . . . was exposed

to respirable asbestos from [UCC]'s products." We agree.

 In a products liability, failure-to-warn case, a plaintiff

must prove (1) the product was defective; (2) the defect existed

when the product left the defendant's control; and (3) the defect

caused injury to a reasonably foreseeable user. James v. Bessemer

 4 A-2300-15T4
Processing Co., 155 N.J. 279, 296 (1998); Coffman v. Keene Corp.,

133 N.J. 581, 593 (1993). In an asbestos failure-to-warn case,

"a plaintiff must prove two types of causation: product-defect

causation and medical causation." Becker v. Baron Bros., 138 N.J.

145, 152 (1994); Coffman, supra, 133 N.J. at 594; Hughes v. A.W.

Chesterton Co., 435 N.J. Super. 326, 337 (App. Div.), certif.

denied, 220 N.J. 41 (2014). Here the issue is medical causation.

 "[M]edical causation means that exposure to the defendant's

asbestos proximately caused the injury." Becker, supra, 138 N.J.

at 152 (citing Coffman, supra, 133 N.J. at 581). To prove medical

causation, a plaintiff must show the exposure to the defendant's

asbestos products was a "substantial factor" in causing the injured

party's disease. James, supra, 155 N.J. at 299 (citing Sholtis

v. Am. Cyanamid Co., 238 N.J. Super. 8, 30-31 (App. Div. 1998)).

We look to the "frequency, regularity, and proximity," as

pronounced in Sholtis, supra, 238 N.J. Super. at 28-29, in order

to determine whether the party's exposure to the defendant's

asbestos-containing product was a "substantial factor" in causing

the alleged injury. James, supra, 155 N.J. at 302-04; Hughes,

supra, 435 N.J. Super. at 337-38; Provini v. Asbestospray Corp.,

360 N.J. Super. 234, 239 (App. Div. 2003). The frequency,

regularity, and proximity test "is not a rigid test with an

absolute threshold level necessary to support a jury verdict."

 5 A-2300-15T4
James, supra, 155 N.J. at 302 (quoting Tragarz v. Keene Corp., 980

F.2d 411, 420 (7th Cir. 1992)). "[T]he phraseology should not

supply 'catch words[,]' [and] the underlying concept should not

be lost." Sholtis, supra, 238 N.J. Super. at 29. However,

"liability should not be imposed on mere guesswork," and the

"[i]ndustry should not be saddled with . . . open-ended exposure

based upon 'a casual or minimum contact.'" Hughes, supra, 435

N.J. Super. at 345.

 Here, it was undisputed that from 1970 to 1971, UCC delivered

at least 1550 pounds of a specific type of asbestos to the

Bloomfield facility, and from 1971 to 1982, 36,823 pounds of

another type of asbestos to the location. We recognize mere

presence of products supplied by UCC at the location decedent

worked does not provide sufficient "actual proof linking the

exposures of [plaintiffs] to those products." Goss v. Am. Cyanamid

Co., 278 N.J. Super. 227, 236 (App. Div. 1994). Plaintiff must

"prove the source of that asbestos was the asbestos-containing

product of a particular defendant." Kurak v. A.P. Green

Refractories Co., 298 N.J. Super. 301, 311-12 (App. Div.), certif.

denied, 152 N.J. 10 (1997).

 However, the evidence also shows decedent regularly worked

directly with the injury-producing element of asbestos, the

contaminated friable dust, during that twelve-year period. See

 6 A-2300-15T4
Hughes, supra, 435 N.J. Super. at 345 ("We have required that

plaintiffs present proof the injured party has had such exposure

to specific products manufactured or sold by the defendant.").

The testimony establishes decedent's contact with asbestos was

frequent, regular, and proximate. The causation of injury by

defendant's products can be proven through use of circumstantial

evidence, as courts have recognized "proof of direct contact is

almost always lacking" in these matters. Ibid. (citation omitted).

 Here, the trial judge granted summary judgment, citing to

Provini; however, unlike the plaintiff in Provini who could not

provide evidence of the work the decedent performed, plaintiff

here presented testimony specifically describing the job decedent

performed at the Bloomfield facility. See Provini, supra, 360

N.J. Super. at 238. Also unlike Provini, who presented no evidence

the decedent was actually exposed to asbestos, the testimony

established decedent's work involved frequent, direct contact with

asbestos. See Ibid. Plaintiff is not merely claiming asbestos

was present within the building, but decedent frequently touched

asbestos while performing his daily job duties.

 Decedent suffered exposure that is more direct than in other

cases upon which UCC relies. In Kurak, the plaintiffs suffered

asbestos exposure from asbestos in the pipes where they worked.

Kurak, supra, 298 N.J. Super. at 311. In Goss, the plaintiffs

 7 A-2300-15T4
spent at least thirty percent of their time working with asbestos

insulation and sometimes worked with boilers containing asbestos

insulation. Goss, supra, 278 N.J. Super. at 237. Here, the

decedent regularly scooped, weighed, and mixed ingredients,

including asbestos.

 While UCC presented evidence other companies provided

asbestos during this period and no witness could unequivocally

link UCC's asbestos to decedent, plaintiff presented evidence UCC

provided over 40,000 pounds of asbestos to the facility over a

twelve-year period while the decedent worked handling asbestos.

Thus, we are satisfied plaintiff has presented at least enough

evidence to survive a motion for summary judgment. Based on the

evidence presented, a reasonable jury could infer the decedent

suffered from exposure to UCC's asbestos.

 Reversed.

 8 A-2300-15T4