SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## Arthur G. Whelan v. Armstrong International, Inc.
### (A-40/41/42/43/44/45/46-18) (081810)

**Argued November 19, 2019 -- Decided June 3, 2020**

**ALBIN, J., writing for the Court.**

The Court considers whether defendants who manufacture or distribute products that, by their design, require the replacement of asbestos-containing components with other asbestos-containing components during the ordinary life of the product have a duty to give adequate warnings to the ultimate user.

Plaintiff Arthur Whelan filed suit against the seven present defendants, who allegedly manufactured or distributed products integrated with asbestos-containing components. Whelan claims he was exposed to asbestos dust while working on those products, including their original asbestos-containing components or asbestos-containing replacement components. Defendants contended that Whelan could not establish that his exposure to asbestos was the result of any product they manufactured or distributed. They disclaimed any liability for Whelan's exposure to asbestos-containing replacement parts that they did not manufacture or distribute, even though the parts were incorporated into their products. Whelan countered that it made no difference whether he was exposed to defendants' original asbestos-containing components or a third party's asbestos-containing components -- defendants' duty to warn and liability attached to both.

The trial court granted summary judgment in favor of defendants. The court concluded that defendants could not be held liable for asbestos-containing replacement components later incorporated into their products unless those components were manufactured or distributed by defendants. And the court found that Whelan could not establish that he was exposed to asbestos-containing components that defendants manufactured or distributed, as opposed to third-party replacement components.

The Appellate Division reversed, determining that defendants had a duty to warn about the dangers of the asbestos-containing replacement components necessary for the continued functioning of their products and that defendants can be held strictly liable for the failure to do so, provided Whelan suffered sufficient exposure to the replacement components to contribute to his disease. See 455 N.J. Super. 569, 599, 606-08 (App. Div. 2018).

1

After Whelan appealed, the Appellate Division issued Hughes v. A.W. Chesterton Co., in which the defendant manufactured pumps whose component parts included asbestos-containing materials. 435 N.J. Super. 326, 332, 341-42 (App. Div. 2014). Those component parts were replaced regularly as part of routine maintenance with other asbestos-containing materials. Id. at 332. The Hughes court held that the defendant had a duty to warn, regardless of who manufactured the replacement components, because the "asbestos-containing gaskets and packing posed an inherent danger in the pumps as originally manufactured" and because "it was reasonably foreseeable . . . that the gaskets and packing would be replaced regularly with gaskets and packing that contained asbestos." Id. at 341. But the Hughes panel upheld the trial court's grant of summary judgment because the plaintiffs failed to establish medical causation. Id. at 346.

Writing for the Appellate Division panel in this case, Judge Currier rejected the ultimate conclusion reached by the Hughes court -- that a defendant manufacturer or distributor could not be held strictly liable in a failure-to-warn lawsuit for exposure to a third party's asbestos-containing replacement components installed as part of the regular maintenance of the defendant's integrated product. 455 N.J. Super. at 579-80, 597. In contrast to the Hughes court, the Whelan panel concluded that defendants could be held strictly liable for the failure to warn about a third party's asbestos-containing replacement components essential to the functioning of the product, provided that Whelan established medical causation. Id. at 597-606. To show medical causation, Whelan must prove that his exposure to the third party's asbestos-containing replacement components sufficiently contributed to his contracting mesothelioma. Id. at 605-06.

The Appellate Division found that Whelan had "presented sufficient evidence detailing his exposure to asbestos," either from defendants' original or replacement components or from a third party's replacement components, to withstand summary judgment. Id. at 580. Thus, the Whelan panel reversed the summary judgment order and left the disputed issues of fact to be resolved by a jury. Id. at 580, 607-08.

The Court granted each defendant's petition for certification. 236 N.J. 358-62 (2019).

**HELD:** Manufacturers and distributors can be found strictly liable for failure to warn of the dangers of their products, including their asbestos-containing components and a third party's replacement components, provided a plaintiff can prove the following: (1) the manufacturers or distributors incorporated asbestos-containing components in their original products; (2) the asbestos-containing components were integral to the product and necessary for it to function; (3) routine maintenance of the product required replacing the original asbestos-containing components with similar asbestos-containing components; and (4) the exposure to the asbestos-containing components or replacement components was a substantial factor in causing or exacerbating the plaintiff's disease.

2

1.  In a common law, strict-liability, failure-to-warn action, a plaintiff must prove that (1) without warnings or adequate warnings, the product was dangerous to the foreseeable user and therefore defective; (2) the product left the defendant's control in a defective condition (without warnings or adequate warnings); and (3) the lack of warnings or adequate warnings proximately caused an injury to a foreseeable user.  That standard encompasses two criteria that must be satisfied in a strict-liability, failure-to-warn case: product-defect causation and medical causation.  Medical causation requires proof of an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity to the plaintiff.  (pp. 22-26)

2.  Any failure-to-warn analysis requires an inquiry into the reasonableness of the defendant's conduct, either in forgoing a warning or in crafting the warning.  Beginning with the assumption that the manufacturer or distributor knows the nature of its product and its injury-producing potential, the issue then becomes whether the manufacturer or distributor acted in a reasonably prudent manner in providing warnings adequate to put the user on notice of the dangers and safe use of the product.  New Jersey courts presume that a worker who receives adequate warnings about the dangers of a product will follow the instructions and take whatever precautionary steps the warnings advise.  That rebuttable heeding presumption accords with the manufacturer's basic duty to warn and fairly reduces the victim's burden of proof.  (pp. 26-27)

3.  In Beshada v. Johns-Manville Products Corp., the Court rejected the "state of the art" defense and allowed for strict liability to be imposed against the defendant manufacturers "for failure to warn of dangers which were undiscoverable at the time" they manufactured their products.  90 N.J. 191, 205 (1982).  The Court determined that "[t]he burden of illness from dangerous products such as asbestos should be placed upon those who profit from its production and, more generally, upon society at large, which reaps the benefits of the various products our economy manufactures."  Id. at 209.  (pp. 28-29)

4.  At this summary-judgment stage, the Court must view the evidence in the light most favorable to Whelan and accept certain provisional conclusions:  (1) defendants' products were designed to function with asbestos-containing components; (2) the manufacturers and distributors designed their products so that during the life of those products the asbestos-containing components would have to be replaced with similar asbestos-containing components for the products to function; (3) without Whelan's use of protective gear, the replacement process, which led to the release of asbestos dust, was a dangerous and potentially injury-producing activity; (4) Whelan's replacement of the asbestos-containing components during routine maintenance created asbestos dust, which substantially contributed to his contracting mesothelioma; (5) the asbestos-containing original components and replacement components necessary for defendants' products to function were no less dangerous whether manufactured or distributed by defendants or third parties; and (6) had defendants placed warnings on their products, Whelan would have heeded those warnings and donned protective gear.  (p. 30)

3

5.  In determining whether defendants owed a strict-liability duty to provide warnings on their products for foreseeable users, like Whelan, who replaced asbestos-containing component parts with similar asbestos-containing components, the Court's analysis is informed by principles enunciated in Beshada and general common law jurisprudence. Typically, in determining whether one party owes a duty to another, courts weigh several factors -- the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.  In addition, foreseeability of harm is a significant consideration in determining whether to impose a duty.  (pp. 31-32)

6.  Here, the relationship is between a manufacturer and the ultimate user of the product. A manufacturer's duty to a foreseeable user of its products has long been recognized. Manufacturers and distributors of asbestos-containing products obviously have the ability to act reasonably -- to exercise due care.  They can place proper warnings on their products, making those products safer "at virtually no added cost and without limiting [the product's] utility."  See id. at 201-02.  Warnings about the dangers of the original asbestos-containing components could easily encompass the dangers of the required asbestos-containing replacement components integrated into the product during routine maintenance at later times.  The public has a clear stake in the proposed solution in light of the well-known risks attendant upon exposure to asbestos dust.  Foreseeability, knowledge of the dangers inherent in the asbestos-containing components here, is imputed to defendants.  See id. at 202.  The risks inherent in a product containing asbestos components can "be reduced to the greatest extent possible without hindering its utility" with the attachment of proper warnings.  See id. at 201.  Last, considering that asbestos-related illnesses are borne by workers and their families, manufacturers are generally in the best position to "spread the cost of losses caused by [their] dangerous products."  See id. at 205-06.  (pp. 33-34)

7.  Given the summary-judgment record before it, the Court concludes that imposing liability on a manufacturer or distributor of a product for failing to provide adequate warnings about the danger of incorporating required asbestos-containing replacement components into the product during routine maintenance satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. Here, the products were dependent on asbestos-containing replacement parts, whether manufactured or distributed by defendants or third parties.  That is the way the products were designed.  Defendants had a duty to provide warnings given the foreseeability that third parties would be the source of asbestos-containing replacement components. Warnings on defendants' products would have provided a reliable form of protection for the ultimate user.  The lack of warnings rendered the products defective.  (pp. 35)

8.  The Court reviews relevant cases from other jurisdictions and notes that some have imposed a duty to warn under similar circumstances while others have not.  The Court concludes, however, that New Jersey's evolving common law jurisprudence in the field

4

of failure-to-warn, strict-liability cases involving asbestos-containing products leads to a result that aligns with similar decisions rendered by the United States Supreme Court, the New York Court of Appeals, and the Maryland Court of Appeals, which have recognized a strict-liability duty to warn of the dangers of necessary replacement components. Like those courts, the Court rejects the position taken by the Hughes court that the product is one thing for product-causation and adequate-warning purposes (defendants' products and asbestos-containing component parts) and another thing for medical-causation purposes (asbestos-containing component parts required for the product to function). The Court disagrees that its holding here alters the requirement for proving medical causation related to defendants' products and observes that plaintiffs still have a strong incentive to identify asbestos-containing component manufacturers, if they can, because those manufacturers are another source for the payment of damages. (pp. 36-42)

**The judgment of the Appellate Division is AFFIRMED and the matter is REMANDED to the trial court.**

**JUSTICE PATTERSON, dissenting,** expresses the view that the majority has substantially altered the test for medical causation that has governed New Jersey's asbestos litigation for decades and stresses that New Jersey has never adopted "theories of collective liability" or other alternative forms of proof as a substitute for product identification in cases such as this. Justice Patterson explains that under longstanding precedent, plaintiffs were required to make a prima facie showing of sufficient intensity of exposure to that specific defendant's product -- as contrasted with another manufacturer's product or a generic class of toxic exposures -- to support a finding of proximate cause by a reasonable jury. Justice Patterson views the majority opinion to erode the core element of a plaintiff's burden of proof in an asbestos case, to unfairly impose upon defendants liability premised on products that they neither manufactured nor sold, and to discourage the product-identification discovery that ordinarily leads to an equitable allocation of fault.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON filed a dissent, in which JUSTICE FERNANDEZ-VINA joins.**

5

SUPREME COURT OF NEW JERSEY
A-40/41/42/43/44/45/46 September Term 2018
081810

Arthur G. Whelan,

Plaintiff-Respondent,

v.

Armstrong International Inc.;
Burnham LLC; Carrier Corp., individually,
d/b/a and as successor to Bryant
Heating & Cooling Systems; Cleaver-
Brooks Inc.; Crown Boiler Co., f/k/a
Crown Industries Inc.; Ford Motor Co.;
Johnson Controls Inc., individually,
d/b/a and as successor to
Evcon Industries Inc. and Coleman
Heating and Air Conditioning
Products, Inc.; NIBCO Inc.,

Defendants-Appellants,

and

A.O. Smith Corp.; Aaron & Co.;
AMG Industries Inc., d/b/a and as
successor to Akron Metallic Gasket
Co.; Automatic Switch Co.; Automotive
Brake Co.; A.W. Chesterton Co.; BASF
Corp.; Bergen Industrial Supply Co.;
Bethlehem Dynatherm, a/k/a Dynatherm
Boiler Manufacturing Inc.; Binsky &
Snyder LLC, individually, d/b/a and
as successor to Binsky & Snyder Co.;
Bonland Industries Inc.; BorgWarner
Morse Tec Inc., as successor to

1

Borg-Warner Corp.; Briggs Industries Inc.; Carlisle Companies Inc.; CBS Corp., f/k/a Viacom Inc., successor by merger to CBS Corp., f/k/a Westinghouse Electric Corp.; Central Brass Co. Inc., individually, d/b/a and as successor to Central Brass Manufacturing Co. and Central Brass & Fixture Co.; Central Engineering & Supply Co. Inc.; Chicago Faucet Co.; Chicago-Wilcox Manufacturing Co. Inc.; Colfax Inc., individually and as successor to Warner Electric Brake & Clutch Co.; Crane Co.; Crosstown Plumbing Supply Inc.; Dana Companies LLC; DAP Inc.; Ductmate Industries Inc.; Dunham-Bush Inc.; Dunphey & Associates Supply Co. Inc.; Duro Dyne Corp.; ECR International Inc., individually, d/b/a and as successor to Utica Boilers Inc., Utica Radiator Corp., Dunkirk Boilers, Pennco Inc., and Olsen Technology Inc.; Essex Plumbing Supply Inc.; Fisher Scientific International Inc.; Fortune Brands Home & Security Inc., individually, d/b/a and as successor to Moen Inc.; Foster Wheeler LLC; General Electric Co.; Georgia-Pacific LLC; The Goodyear Tire & Rubber Co.; Goulds Pumps Inc.; Graco Inc.; Grundfos Pumps Corp.; H.B. Smith Co. Inc.; Hilco Inc., individually and as successor to Universal Supply Group Inc. and Amber Supply Co.; Honeywell International Inc., f/k/a Honeywell Inc., Allied Signal Inc. and Bendix Corp.; Interline Brands Inc., individually, d/b/a and as successor to J.A. Sexauer Inc.; International

2

Business Machines Corp.; ITT Corp.; Kaiser Gypsum Co. Inc.; Kantor Supply Inc.; Kohler Co., individually, d/b/a and as successor to Sterling Faucet Co.; Lennox Industries Inc., individually, d/b/a and as successor to Armstrong Furnace Co.; Magnatrol Valve Corp.; Manhattan Welding Co. Inc.; Maremont Corp.; Meritor Inc., individually and as successor to Rockwell International Corp.; Mestek Inc., individually, d/b/a and as successor to H.B. Smith Co., Smith Cast Iron Boilers and Mills Boilers; Mueller Industries Inc.; National Automotive Parts Association Inc.; New Jersey Boiler Repair Co.; NCH Corp., as successor to Creed Co. and Daniel P. Creed Co. Inc.; NMBFIL Inc., f/k/a Bondo Corp.; Owens-Illinois Inc.; Peerless Industries Inc.; Pneumo-Abex LLC, individually and as successor to Abex Corp.; Price Pfister Inc.; The Prudential Insurance Co. of America; Rheem Manufacturing Co.; Riley Power Inc., f/k/a Riley-Stoker Corp.; Robertshaw Controls Co., individually and as successor to Fulton Sylphon Co.; Sid Harvey Industries Inc.; Slant/Fin Corp.; Sloan Valve Co.; SOS Products Co. Inc.; Speakman Co.; Superior Boiler Works Inc.; Sur-Seal Corp.; Taco Inc.; Trane U.S. Inc., individually and as successor to American Standard Inc. and American Radiator Co.; Turner Construction Co.; Unilever United States Inc.; Uniroyal Holding Inc.; Verizon New Jersey Inc., individually and as

3

successor to New Jersey Bell
Telephone Co.; Victaulic Co.;
Wallwork Bros. Inc.; Wal-Rich Corp.;
Weil-McLain, a division of the
Marley-Wylain Co., a wholly-owned
subsidiary of the Marley Co. LLC;
W.V. Egbert & Co. Inc.; York
International Corp.; Zurn Industries
LLC, individually, d/b/a and as
successor to Erie City Iron Works and
Zurn Industries Inc.; AII Acquisition
LLC, individually, as successor to,
f/k/a, and d/b/a Holland Furnace Co.,
Athlone Industries Inc., T.F.C.
Holding Corp. and Thatcher Furnace
Co.; American Premier Underwriters,
individually and as successor to
Hydrotherm Corp.; August Arace & Sons
Inc.; Honeywell Inc.; Rockwell
Automation Inc., individually, d/b/a
and as successor to Sterling Faucet
Co.; Rockwell Collins Inc.,
individually, d/b/a and as successor
to Sterling Faucet Co.; TriMas Corp.,
individually, d/b/a and as successor
to NI Industries Inc.; Wilmar
Industries Inc., individually, d/b/a
and as successor to J.A. Sexauer Inc.;
BASF Catalysts LLC; TriMas
Corp., individually and as successor
in interest to Norris Industries
and/or NI Industries Inc.; York
International Corp., individually and
as successor to The Coleman Company
Inc., a/k/a Coleman Heating and Air
Conditioning Products Inc.,

Defendants.

4

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
455 N.J. Super. 569 (App. Div. 2018).

Argued                      Decided
November 19, 2019           June 3, 2020

Sean Marotta argued the cause for appellant Ford Motor
Co. (Hogan Lovells US and K&L Gates, attorneys; Sean
Marotta, Joseph F. Lagrotteria, and Adam G. Husik, on
the briefs).

Karen J. Stanzione-Conte argued the cause for appellants
Cleaver-Brooks Inc. and Crown Boiler Co. (Reilly,
McDevitt & Henrich, attorneys; Karen J. Stanzione-
Conte and Michelle B. Cappuccio, on the briefs).

Jeffrey S. Kluger argued the cause for appellant
Armstrong International Inc. (McGivney, Kluger &
Cook, attorneys; Jeffrey S. Kluger and Christopher M.
Longo, on the briefs).

Meghan C. Goodwin argued the cause for appellant
Burnham LLC (Clyde & Co. US, attorneys; Jeffrey
Fegan, of counsel and on the briefs, and Meghan C.
Goodwin and Daren S. McNally, on the briefs).

Patrick K.A. Elkins submitted a brief on behalf of
appellant Johnson Controls Inc. (Morgan, Lewis &
Bockius, attorneys; Patrick K.A. Elkins and Bryan M.
Killian of the District of Columbia and Connecticut bars,
admitted pro hac vice, on the brief).

Sara K. Saltsman submitted a brief on behalf of appellant
Carrier Corp. (Mayfield, Turner, O'Mara & Donnelly,
attorneys; Sara K. Saltsman, on the briefs).

Christopher M. Placitella argued the cause for respondent Arthur G. Whelan (Cohen Placitella & Roth and The Lanier Law Firm, attorneys; Rachel A. Placitella and Shannon K. Tully, on the briefs).

Amber R. Long argued the cause for amicus curiae New Jersey Association for Justice (Levy Konigsberg, attorneys; Amber R. Long and Moshe Maimon, on the brief).

Michael E. Waller submitted a brief on behalf of amicus curiae Chamber of Commerce of the United States of America (K&L Gates and U.S. Chamber Litigation Center, attorneys; Michael E. Waller, Tara L. Pehush, Michael B. Schon (U.S. Chamber Litigation Center), of the Arizona and the District of Columbia bars, admitted pro hac vice, Nicholas P. Vari (K&L Gates), of the Pennsylvania bar, admitted pro hac vice, Michael J. Ross (K&L Gates), of the Pennsylvania bar, admitted pro hac vice, and Jake D. Morrison (K&L Gates), of the Pennsylvania bar, admitted pro hac vice, on the brief).

Anita Hotchkiss submitted a brief on behalf of amicus curiae Product Liability Advisory Council, Inc. (Goldberg Segalla, attorneys; Anita Hotchkiss and H. Lockwood Miller III, on the brief).

Phil S. Goldberg submitted a brief on behalf of amicus curiae Coalition for Litigation Justice, Inc. (Shook, Hardy & Bacon, attorneys; Phil S. Goldberg and Mark A. Behrens, of the Virginia and the District of Columbia bars, admitted pro hac vice, on the brief).

Christopher J. Dalton submitted a brief on behalf of amicus curiae Washington Legal Foundation (Buchanan Ingersoll & Rooney, attorneys; Christopher J. Dalton and Linda P. Reig, on the brief).

6

Thomas Comerford submitted a brief on behalf of amicus curiae Asbestos Disease Awareness Organization (Weitz & Luxenberg, attorneys; Thomas Comerford, of counsel and on the brief, and Jason P. Weinstein, of the New York bar, admitted pro hac vice, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

Exposure to asbestos is a known cause of a deadly form of cancer called mesothelioma. Defendants manufactured or distributed products integrated with asbestos-containing components. In this common law, failure-to-warn product-liability action, plaintiff Arthur Whelan alleges that he contracted mesothelioma while working on defendants' products and, in particular, their asbestos-containing components or the asbestos-containing replacement components manufactured or supplied by third parties, who are not named as defendants. He contends that defendants' products were designed to be used with later-incorporated third-party asbestos-containing replacement components, which were necessary for the continued functioning of those products.

Whelan claims that defendants had a duty to provide warnings about the dangers presented by exposure not only to the asbestos-containing components integrated into their products, but also to the required asbestos-containing replacement components. Defendants counter that they had no duty to warn

7

about the dangers of asbestos-containing replacement components manufactured or supplied by third parties and incorporated into their products after those products left their control.

The trial court granted summary judgment in favor of each defendant. The court found that, although defendants had a duty to warn about the dangers of their products' original asbestos-containing components, they could not be held liable for the replacement components manufactured or distributed by third parties -- even if those components were similar to the asbestos-containing components originally integrated into their products.

The Appellate Division reversed the summary judgment order. The Appellate Division determined not only that defendants had a duty to warn about the dangers of the asbestos-containing replacement components necessary for the continued functioning of their products, but also that defendants can be held strictly liable for the failure to do so, provided Whelan suffered sufficient exposure to the replacement components to contribute to his disease. See Whelan v. Armstrong Int'l, Inc., 455 N.J. Super. 569, 599, 606-08 (App. Div. 2018).

We now affirm. In this strict-liability case, the product at issue is the aggregation of all its component parts. For failure-to-warn purposes, no distinction is made between the original asbestos-containing components and

8

the asbestos-containing replacement components necessary for the continued operation of defendants' integrated products -- even though the replacement components are manufactured or distributed by a third party. Our developing common law jurisprudence, guided by principles of public policy and equity, dictates that defendants who manufacture or distribute products that, by their design, require the replacement of asbestos-containing components with other asbestos-containing components during the ordinary life of the product have a duty to give adequate warnings to the ultimate user.

The purpose of warnings is to allow a worker, like Whelan, the opportunity to take the necessary precautions, such as donning protective gear, to protect against the inhalation of deadly asbestos fibers or dust. The manufacturer or distributor of the integrated product is best situated to provide those warnings. Here, defendants provided no warnings at all.

We hold that manufacturers and distributors can be found strictly liable for failure to warn of the dangers of their products, including their asbestos-containing components and a third party's replacement components, provided a plaintiff can prove the following: (1) the manufacturers or distributors incorporated asbestos-containing components in their original products; (2) the asbestos-containing components were integral to the product and necessary for it to function; (3) routine maintenance of the product required replacing the

9

original asbestos-containing components with similar asbestos-containing components; and (4) the exposure to the asbestos-containing components or replacement components was a substantial factor in causing or exacerbating the plaintiff's disease.

We remand to the trial court for proceedings consistent with this opinion.

I.

A.

Plaintiff Whelan filed suit against defendants Armstrong International, Inc., Burnham LLC, Carrier Corp., Cleaver-Brooks Inc., Crown Boiler Co., Inc., Ford Motor Co., and Johnson Controls Inc., who allegedly manufactured or distributed products with asbestos-containing components integral to the functioning of the products.[1] Whelan claims that he was exposed to asbestos dust while working on those products, including their original asbestos-containing components or asbestos-containing replacement components. According to Whelan, replacement components, whether manufactured or distributed by defendants or third parties, were required for the continued functioning of those products. Although Whelan worked on replacing

---

[1] These are the only defendants on the case caption who appeared before the Appellate Division and petitioned this Court for certification.

10

asbestos-containing components long after the original products left defendants' control, he contends that the failure to warn of the dangers of both the original and replacement asbestos-containing components renders defendants strictly liable under our common law.

Defendants moved for summary judgment, contending that Whelan could not establish that his exposure to asbestos was the result of any product, including original component parts, manufactured or distributed by defendants. They disclaimed any liability for Whelan's exposure to asbestos-containing replacement parts that they did not manufacture or distribute, even though the parts were incorporated into their products. Whelan countered that it made no difference whether he was exposed to defendants' original asbestos-containing components or a third party's asbestos-containing components -- defendants' duty to warn and liability attached to both.

The trial court granted summary judgment in favor of defendants. The court concluded that defendants could not be held liable for asbestos-containing replacement components later incorporated into their products unless those components were manufactured or distributed by defendants. In dismissing Whelan's complaint, the court found that Whelan could not establish that he was exposed to asbestos-containing components in defendants' original products or replacement components that defendants

11

manufactured or distributed, as opposed to replacement components a third party manufactured or distributed.

It is not the charge of this Court to resolve material facts disputed by the parties; that is an undertaking reserved for a jury. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Because the trial court entered summary judgment in favor of defendants, this Court must give Whelan, the non-moving party, the benefit of all favorable evidence and inferences presented in the record. See id. at 584-85; see also Smith v. Fireworks by Girone, Inc., 180 N.J. 199, 214 (2004).

Cast in that light, we agree with the Appellate Division that there is sufficient evidence in the record to support the conclusion that Whelan was exposed either to (1) asbestos-containing components in defendants' original products; (2) asbestos-containing replacement components manufactured or distributed by defendants; or (3) asbestos-containing replacement components manufactured or distributed by third parties. At this stage, we must also accept the opinions offered by Whelan's experts -- that his exposure to asbestos dust from working on a regular basis on defendants' original integrated products or on those products with their asbestos-containing replacement components substantially contributed to Whelan contracting mesothelioma. In reaching

12

those results, we rely on the Appellate Division's extensive analysis of the record.  Whelan, 455 N.J. Super. at 579-92.

### B.

Over a forty-year period, at various times, Whelan did work on defendants' products while performing tasks as a residential and commercial plumber and automobile mechanic.  Here is a brief summary of the evidence viewed in the light most favorable to Whelan.

### 1.

In the 1950s, Whelan worked on approximately twenty of Armstrong's steam traps.  In cleaning the traps, Whelan either replaced the traps' original asbestos-containing gaskets or replaced gaskets identical to the original ones that were necessary for the functioning of the steam trap.[2]  During the cleaning, Whelan brushed and scraped off the asbestos gaskets.

### 2.

In the 1950s and 1960s, Whelan installed twenty to thirty Burnham packaged boilers, which contained asbestos insulation under the boilers' metal jackets.  The process of removing the insulation generated gray dust, which Whelan inhaled.  Whelan also cleaned the fireboxes of approximately twelve

---

[2] "A steam trap is placed on the end of a boiler's steam line to prevent the steam from going back into the boiler." Id. at 581 n.3.  A gasket is a seal used for the steam trap to function. Id. at 581 n.4.

Burnham boilers, which contained asbestos components that came loose during the cleaning process.[3]

Between 1959 and 1968, Whelan installed, repaired, or cleaned more than a dozen Carrier "Bryant" boilers, which incorporated asbestos-containing components, such as "jacket insulation" and "rope gaskets." Those processes required disturbing asbestos that generated visible dust that Whelan inhaled.

Similarly, during the 1950s, Whelan worked on Cleaver-Brooks boilers and, from 1959 to 1968, on Crown boilers -- work that generated asbestos dust. Whelan could not identify the manufacturers of the asbestos-containing materials in those boilers.

3.

As an auto mechanic in the 1950s, during a six- to seven-month period, Whelan replaced asbestos-containing brake systems on approximately three Ford automobiles and, during a six-month period, did machine work on a multitude of asbestos-containing Ford brake drums. The process of carrying out those tasks generated asbestos dust. In the 1990s, Whelan also performed personal repairs on Ford automobiles, including the installation of new brake systems that created asbestos dust. Ford brake drums originally equipped with

---

[3] "Fireboxes were constructed of cement brick put together with an asbestos-based refractory cement." Id. at 583 n.7.

asbestos linings also required asbestos-lining replacements to function properly.

4.

While working as an employee of a company, between 1978 and 1996, Whelan repacked Johnson Control steam valves. The packing contained asbestos, and the repacking process exposed Whelan to asbestos dust. Although Whelan could not identify the manufacturers of the packing, the steam valves were designed to be used with asbestos components.

II.

A.

As noted earlier, the trial court ultimately determined that Whelan did not know whether he was working on defendants' original asbestos-containing components or replacement components, or a third party's replacement components. On that ground, the court dismissed Whelan's complaint because of his failure to show with specificity that he was exposed on a regular and frequent basis to asbestos products actually manufactured or distributed by defendants. Whelan appealed.

B.

Two weeks later, a panel of the Appellate Division issued Hughes v. A.W. Chesterton Co., 435 N.J. Super. 326 (App. Div. 2014), a decision that, in

15

large part, supported the legal theory advanced by the trial court in this case for granting summary judgment.

In <u>Hughes</u>, the defendant manufactured pumps whose component parts included asbestos-containing gaskets and packing. <u>Id.</u> at 332, 341-42. Those component parts were replaced regularly as part of routine maintenance with other asbestos-containing gaskets and packing. <u>Id.</u> at 332. The plaintiffs worked in proximity to the defendant's pumps after the original gaskets and packing had been replaced, but the identities of the manufacturers or suppliers of the asbestos-containing replacement components were unknown. <u>Id.</u> at 332, 334. In a failure-to-warn lawsuit, the plaintiffs claimed that the defendant manufacturer was strictly liable for the asbestos-related diseases they contracted from exposure to the pumps' asbestos-containing components. <u>Id.</u> at 331-32. The trial court dismissed the plaintiffs' lawsuit on summary judgment because the plaintiffs failed to show that the defendant had manufactured or distributed an asbestos-containing product to which they had been exposed. <u>Id.</u> at 334. The Appellate Division affirmed. <u>Id.</u> at 347.

The <u>Hughes</u> court nevertheless held that the defendant had a duty to warn, regardless of who manufactured the replacement components, because the "asbestos-containing gaskets and packing posed an inherent danger in the pumps as originally manufactured" and because "it was reasonably foreseeable

16

. . . that the gaskets and packing would be replaced regularly with gaskets and packing that contained asbestos." Id. at 341. The Appellate Division concluded that imposing a duty to warn "would be reasonable, practical, and feasible" given that "the risk of [asbestos] exposure continued and was perhaps increased by the replacement process" and that warnings would allow for the provision of "safeguards for workers who made the replacements." Id. at 343.

The Hughes panel, however, upheld the grant of summary judgment because the plaintiffs failed to establish medical causation -- that is, the plaintiffs did not "produce evidence they had any contact with friable asbestos in replacement parts that were manufactured or sold by [the defendant]." Id. at 346 (citing Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 29 (App. Div. 1989)). That ruling effectively rendered unenforceable the duty to warn about the defendant's pumps' inherently dangerous replacement components.

C.

Writing for the panel in Whelan, Judge Currier rejected the ultimate conclusion reached by the Hughes court -- that a defendant manufacturer or distributor could not be held strictly liable in a failure-to-warn lawsuit for exposure to a third party's asbestos-containing replacement components installed as part of the regular maintenance of the defendant's integrated product. Whelan, 455 N.J. Super. at 579-80, 597.

17

The Whelan panel, like the Hughes court, determined that defendants' "duty to warn extend[ed] to any danger created by those replacement parts" necessary for their products to function, regardless of whether a third party manufactured or distributed the replacement parts. See id. at 580, 592-605. In contrast to the Hughes court, the Whelan panel concluded that defendants could be held strictly liable for the failure to warn about a third party's asbestos-containing replacement components essential to the functioning of the product, provided that Whelan established medical causation. Id. at 597-606. To show medical causation, Whelan must prove that his exposure to the third party's asbestos-containing replacement components sufficiently contributed to his contracting mesothelioma. Id. at 605-06.

The Appellate Division in Whelan expressed its fundamental differences with the Hughes court. To the Hughes panel, the product "was only the manufacturer's pump, and did not include its component parts." Id. at 597 (citing Hughes, 435 N.J. Super. at 345-46). The Whelan panel found such a "limited definition of 'product' . . . inconsistent with deep-rooted principles of product liability." Ibid. To the Whelan panel, "[t]he 'product' is the complete manufactured item as delivered by the manufacturer to the consumer, not just the asbestos contained in one of the product's components." Id. at 598. It maintained, moreover, that a product containing asbestos components when

18

first supplied by the manufacturer without warnings "remains in substantially the same defective condition" when replaced by asbestos-containing components years later by a worker.  Id. at 597-98.

The Whelan panel articulated a governing rule for strict-liability, failure-to-warn cases like this one:

> [A] manufacturer will have a duty to warn in strict liability if a plaintiff can show:  1) the manufacturer's product as marketed to the end user contained asbestos-containing components;  2) the asbestos-containing components were integral to the function of the product; and 3) the manufacturer was reasonably aware its product would require periodic and routine maintenance involving the replacement of the asbestos-containing component parts with other asbestos-containing component parts.
>
> [Id. at 599.]

On that basis, the Appellate Division found that Whelan had "presented sufficient evidence detailing his exposure to asbestos," either from defendants' original or replacement components or from a third party's replacement components, to withstand summary judgment.  Id. at 580.  Thus, the Whelan panel reversed the trial court's summary judgment order and left the disputed issues of fact to be resolved by a jury.  Id. at 580, 607-08.

19

D.

We granted each defendant's petition for certification. 236 N.J. 358-62 (2019). We also granted the motions of (1) the Chamber of Commerce of the United States of America, (2) the Coalition for Litigation Justice, Inc., (3) the Product Liability Advisory Council, Inc., (4) the Washington Legal Foundation -- organizations supporting defendants' position -- and (5) the Asbestos Disease Awareness Organization, and (6) the New Jersey Association for Justice -- organizations supporting Whelan's position -- to participate as amici curiae.

III.

A.

Defendants and their amici supporters generally advance the same arguments, which, in many ways, are aligned with the decision in Hughes. They contend that the "product" for failure-to-warn purposes is the injury-producing component part, not the completed product in which it is incorporated. Defendants concede that they have a duty to warn of the dangers related to asbestos-containing components that are integrated in a completed product that they have manufactured or distributed. They submit, however, that they have no duty to warn of the dangers associated with asbestos-containing components that they did not manufacture or distribute -- that is,

20

third-party component parts incorporated into their completed products, sometimes many years after those products have left their control.

Defendants also fault the Appellate Division for introducing negligence concepts -- a defendant's reasonable awareness of the need for replacement components -- that they say conflict with the strict-liability jurisprudence of Beshada v. Johns-Manville Products Corp., 90 N.J. 191 (1982), and for overturning the summary-judgment order without requiring proof that Whelan was exposed with frequency and regularity to asbestos-containing components that they manufactured or distributed, citing Sholtis, 238 N.J. Super. at 29.

### B.

Whelan's and his supporting amici's arguments, for the most part, echo the Appellate Division's reasoning in Whelan. He contends that "the 'product' . . . is the complete manufactured item as delivered by the manufacturer to the consumer." Here, according to Whelan, the products were defective because they did not have warnings about the health dangers of the components that contained asbestos or about the asbestos-containing replacement components necessary for the products to continue to operate. Whelan submits that defendants are subject to strict liability for their failure to warn because (1) their products contained asbestos components, (2) the normal use of the products required the replacement of those components with substantially

21

similar asbestos-containing components, and (3) the replacement process exposed unsuspecting workers to the injurious hazards of inhaling asbestos dust. In Whelan's view, the Appellate Division correctly overturned the summary-judgment order because he presented sufficient proofs that he was exposed to asbestos on a regular and frequent basis from defendants' products' original components or third-party replacement components.

## IV.

The parties do not dispute that defendants had a duty to warn about any dangers inherent in their completed products, including component parts, when those products left their control. They do contest whether the duty to warn extended to a third party's replacement components incorporated into defendants' products many years after leaving defendants' control and whether defendants should be held strictly liable for any harm caused by Whelan's exposure to those replacement components. Those issues are critical to the parties because Whelan worked on some of defendants' products many years after those products entered the stream of commerce and he cannot recall who manufactured or distributed the asbestos-containing replacement parts.

## A.

The resolution of these issues is guided by common law principles governing product-liability jurisprudence, not the New Jersey Product Liability

Act (PLA), N.J.S.A. 2A:58C-1 to -11.[4]  James v. Bessemer Processing Co.,

155 N.J. 279, 295-96 (1998); see also Becker v. Baron Bros., 138 N.J. 145,

151 (1994).  Asbestos claims "by and large" involve "workplace exposure to

contaminated ambient air" and are therefore deemed to be environmental torts.

In re Lead Paint Litig., 191 N.J. 405, 439 (2007); see also Stevenson v. Keene

Corp., 254 N.J. Super. 310, 322 (App. Div. 1992), aff'd, 131 N.J. 393 (1993).

The PLA by its explicit terms does "not apply to any environmental tort

action." N.J.S.A. 2A:58C-6.  Because the asbestos claims here fall within the

PLA's environmental tort exception, we look to the common law.[5]

The standard in a failure-to-warn case is no different, whether the action

is considered under the PLA or our common law jurisprudence.  See Zaza v.

Marquess & Nell, Inc., 144 N.J. 34, 49 (1996) ("[U]nder the [PLA], as under

the common law, the ultimate question to be resolved in . . . failure-to-warn

cases is whether the manufacturer acted in a reasonably prudent manner

. . . .").[6]  The Legislature clearly did not intend the PLA to "effect a doctrinal

---

[4]  The PLA provides a cause of action against manufacturers whose products
fail to include "adequate warnings or instructions."  See N.J.S.A. 2A:58C-2.

[5]  At common law, a product-liability action could rest "on grounds of
negligence, strict liability, or both."  James, 155 N.J. at 296.  Here, we are
concerned only about a strict-liability action.

[6]  Compare Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 403 (1982)
(common law definition of adequate warning), with N.J.S.A. 2A:58C-4 (PLA

change in the common law," and "generally 'leaves unchanged the . . . theories under which a manufacturer . . . may be held strictly liable for harm caused by a product.'"  Jurado v. W. Gear Works, 131 N.J. 375, 384 (1993) (omissions in original) (quoting Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 94 (1990)).

"[A] manufacturer has a duty to ensure that the products it places into the stream of commerce are safe when used for their intended purposes." Zaza, 144 N.J. at 48.  Many products require adequate instructions on the proper use of the product to render them safe, and therefore the lack of adequate warnings about the product's inherent dangers will constitute a defect in the product itself.  See Feldman v. Lederle Labs., 97 N.J. 429, 450 (1984); see also Becker, 138 N.J. at 151-52 ("A failure to warn, or a failure to warn properly, can constitute a defect in a product sufficient to support an action in strict liability."); Freund v. Cellofilm Props., Inc., 87 N.J. 229, 243 (1981) ("[A]n adequate warning is one that includes the directions, communications, and information essential to make the use of a product safe.").  In short, "the

definition of adequate warning).  See generally Assemb. Ins. Comm. Statement to S. Comm. Substitute for S. 2805 1-3 (L. 1987, c. 197) (June 22, 1987) (stating that the PLA does not "affect existing statutory and common law rules concerning . . . matters not expressly addressed by this legislation" and explaining that the PLA sets forth only "a general definition of an adequate warning"); Sponsor's Statement to S. 2805 4-6 (L. 1987, c. 197) (Nov. 17, 1986) (same).

absence of a warning to unsuspecting users that the product can potentially cause injury" is a product defect. Coffman v. Keene Corp., 133 N.J. 581, 593-94 (1993).

"The focus in a strict liability case is upon the product itself," not on the conduct of the manufacturer. Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982). "Knowledge of a product's dangerous characteristics is imputed to the defendant," and therefore "the defendant's lack of fault is irrelevant." Id. at 394-95. Nevertheless, in a failure-to-warn case, the element of reasonableness, which is generally a negligence principle, comes into play in determining whether a manufacturer failed to give a necessary warning or an adequate warning. See Feldman, 97 N.J. at 451.[7]

In a common law, strict-liability, failure-to-warn action, a plaintiff must prove that (1) without warnings or adequate warnings, the product was dangerous to the foreseeable user and therefore defective; (2) the product left

---

[7] Decisions in other jurisdictions, discussed later in this opinion, similarly recognize this principle. See, e.g., In re N.Y.C. Asbestos Litig., 59 N.E.3d 458, 469 (N.Y. 2016) ("[F]ailure-to-warn claims grounded in strict liability and negligence are functionally equivalent, as both forms of a failure-to-warn claim depend on the principles of reasonableness and public policy at the heart of any traditional negligence action."); May v. Air & Liquid Sys. Corp., 129 A.3d 984, 998 (Md. 2015) (recognizing "the intersections between strict liability and negligent failure to warn claims" and concluding "that a manufacturer has a duty to warn of asbestos-containing replacement components that it has not placed into the stream of commerce in strict liability in the same narrow circumstances as in negligence").

the defendant's control in a defective condition (without warnings or adequate warnings); and (3) the lack of warnings or adequate warnings proximately caused an injury to a foreseeable user. Zaza, 144 N.J. at 49; Feldman, 97 N.J. at 449; see also Clark v. Safety-Kleen Corp., 179 N.J. 318, 336 (2004).

That standard encompasses two criteria that must be satisfied in a strict-liability, failure-to-warn case: product-defect causation and medical causation. See James, 155 N.J. at 297. For product-defect causation, the plaintiff must show that the defect in the product -- the lack of warnings or adequate warnings -- was a proximate cause of the asbestos-related injury. Coffman, 133 N.J. at 594. For medical causation, the plaintiff must show that the injury was "proximately caused by exposure to defendant's asbestos product," ibid., that is, "the exposure [to each defendant's product] was a substantial factor in causing or exacerbating the disease," James, 155 N.J. at 299 (alteration in original) (quoting Sholtis, 238 N.J. Super. at 30-31). Medical causation requires proof of "'an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity' to the plaintiff." Id. at 301 (quoting Sholtis, 238 N.J. Super. at 28).

Any failure-to-warn analysis requires an inquiry into the reasonableness of the defendant's conduct, either in forgoing a warning or in crafting the warning. See Feldman, 97 N.J. at 451. Beginning with the assumption that the

26

manufacturer or distributor knows the nature of its product and its injury-producing potential, the issue then becomes whether the manufacturer or distributor "acted in a reasonably prudent manner" in providing warnings adequate to put the user on notice of the dangers and safe use of the product. See ibid.; cf. N.J.S.A. 2A:58C-4 ("An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used . . . .").

Under our failure-to-warn jurisprudence, we presume that a worker who receives adequate warnings about the dangers of a product will follow the instructions and take whatever precautionary steps the warnings advise. Coffman, 133 N.J. at 602-03. The "heeding presumption in failure-to-warn cases furthers the objectives of the strong public policy that undergirds our doctrine of strict products liability." Ibid. It "accords with the manufacturer's basic duty to warn" and "fairly reduces the victim's burden of proof." Id. at 603. To rebut the heeding presumption, the defendant must produce evidence that the worker would not have "heeded" adequate warnings. Ibid.

27

B.

In <u>Beshada</u>, our Court set forth certain governing principles to guide failure-to-warn cases involving asbestos-containing products. 90 N.J. 191. In that case, the plaintiff workers and workers' survivors filed a strict-liability, failure-to-warn lawsuit against the defendant manufacturers, alleging that their exposure to the defendants' asbestos products caused them to contract various asbestos-related illnesses. <u>Id.</u> at 196. The defendants asserted the "state of the art" defense to explain the decades during which the "defendants' products allegedly contained no warning of their hazardous nature." <u>Id.</u> at 197. In short, the defendants claimed that "no one knew or could have known that asbestos was dangerous when it was marketed." <u>Ibid.</u>

To advance the public policy goals of our strict-liability jurisprudence, we rejected the "state of the art" defense and allowed for strict liability to be imposed against the defendant manufacturers "for failure to warn of dangers which were undiscoverable at the time" they manufactured their products. <u>Id.</u> at 205. <u>Beshada</u> articulated three rationales for that approach. <u>Id.</u> at 205-08.

Under the "Risk Spreading" rationale, "spreading the costs of injuries among all those who produce, distribute and purchase manufactured products is far preferable to imposing it on the innocent victims who suffer illnesses and disability from defective products." <u>Id.</u> at 205-06. Under the "Accident

28

Avoidance" rationale, "imposing on manufacturers the costs of failure to discover hazards [creates] an incentive for them to invest more actively in safety research" and thus "'minimize the costs of accidents.'" Id. at 206-07 (quoting Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 173 (1979)). Last, under the "Fact [F]inding [P]rocess" rationale, as a matter of fairness, manufacturers should "not be excused from liability because their prior inadequate investment in safety rendered the hazards of their product unknowable." Id. at 207-08.

The analysis in Beshada concluded with the simple notion that without warnings, the users of potentially dangerous products are "unaware" of the products' hazards and therefore cannot "protect themselves from injury." Id. at 209. In that light, the Court determined that "[t]he burden of illness from dangerous products such as asbestos should be placed upon those who profit from its production and, more generally, upon society at large, which reaps the benefits of the various products our economy manufactures." Ibid.[8]

---

[8] Our courts recognize that "asbestos-containing products are not uniformly dangerous and . . . courts should not treat them all alike." Becker, 138 N.J. at 160. "[T]he term 'asbestos-containing products' describes a variety of materials with differing amounts of asbestos and different built-in safeguards." Ibid. The "focus [is] on the specific product." Id. at 159. Therefore, we do not assume "that all asbestos-containing products without warnings are defective as a matter of law." Id. at 166. Having said that, no one claims that the products before us are not defective without an adequate warning.

## C.

At this summary-judgment stage of the proceedings, we must view the evidence in the light most favorable to Whelan and therefore accept certain provisional conclusions: (1) defendants' products were designed to function with asbestos-containing components; (2) the manufacturers and distributors designed their products so that during the life of those products the asbestos-containing components would have to be replaced with similar asbestos-containing components for the products to function; (3) without Whelan's use of protective gear, the replacement process, which led to the release of asbestos dust, was a dangerous and potentially injury-producing activity; (4) Whelan's replacement of the asbestos-containing components during routine maintenance created asbestos dust inhaled by Whelan, which, according to his experts' testimony, substantially contributed to his contracting mesothelioma; (5) the asbestos-containing original components and the later asbestos-containing replacement components necessary for defendants' products to function were no less dangerous whether manufactured or distributed by defendants or third parties; and (6) had defendants placed warnings on their products, Whelan would have heeded those warnings and donned protective gear.

Whether a defendant manufacturer can be held strictly liable for the failure to warn of foreseeable dangers of a third party's asbestos-containing replacement components later integrated into its product during routine maintenance is an issue of first impression for this Court. Both the Hughes and Whelan panels of the Appellate Division agreed that the manufacturer owed a duty to warn of the dangers of the required replacement components, regardless of who manufactured the components. Both agreed that the failure to provide adequate warnings constituted a product defect.

The panels diverged on the issue of medical causation. The Hughes panel concluded that a defendant manufacturer or distributor, regardless of its duty to warn, cannot be held strictly liable for a third party's injury-causing replacement component incorporated into the product after the product leaves the defendant's control. 435 N.J. Super. at 346. We do not accept the legal theory advanced in Hughes that a duty to warn, once recognized, has no real consequences -- that a violation of the duty is essentially meaningless. It makes little sense to impose a duty to warn if the violation of the duty leads to a tortious injury for which there is no remedy. Under our jurisprudence, we presume that had adequate warnings been given, Whelan would have heeded those warnings and taken steps to protect himself from exposure to the

asbestos dust in defendants' products and the products' replacement components.

Therefore, the question we must answer is whether imposing liability for the violation of a duty to warn "satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." See generally Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993).

In determining whether defendants owed a strict-liability duty to provide warnings on their products for foreseeable users, like Whelan, who replaced asbestos-containing component parts with similar asbestos-containing components, our analysis is informed by the principles enunciated in Beshada and our general common law jurisprudence. See Hopkins, 132 N.J. at 435. Typically, in determining whether one party owes a duty to another, we weigh "several factors -- the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid. In addition, "foreseeability of harm is a significant consideration" in determining whether to impose a duty. See Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996).[9]

---

[9] Despite the strict-liability principles generally governing product-liability cases, mentioned earlier, the concept of reasonableness enters into the analysis of whether a warning is needed or adequate. See Feldman, 97 N.J. at 451.

Here, the relationship is between a manufacturer and the ultimate user of the product. A manufacturer's duty to a foreseeable user of its products has long been recognized. Michalko, 91 N.J. at 394. "The overriding goal of strict products liability is to protect consumers and promote product safety." Fischer v. Johns-Manville Corp., 103 N.J. 643, 657 (1986).

The attendant risk of exposure to asbestos dust from asbestos-containing products -- the contracting of serious and often deadly asbestos-related illnesses, such as asbestosis and mesothelioma -- is well known and needs no extended discussion. See, e.g., Beshada, 90 N.J. at 197-98; Stevenson, 254 N.J. Super. at 320-22.

Manufacturers and distributors of asbestos-containing products obviously have the ability to act reasonably -- to exercise due care. They can place proper warnings on their products, making those products safer "at virtually no added cost and without limiting [the product's] utility." See Beshada, 90 N.J. at 201-02. Warnings about the dangers of the original asbestos-containing components could easily encompass the dangers of the required asbestos-containing replacement components integrated into the product during routine maintenance at later times. See Air & Liquid Sys. Corp. v. DeVries, 586 U.S. ___, 139 S. Ct. 986, 994-95 (2019).

The public has a clear stake in the proposed solution. Exposure to asbestos can cause serious diseases and even death. Reducing the number of workers subject to the ravages of asbestos-related illnesses is an obvious societal benefit on many different levels. The public also has an interest in limiting the extent of individual suffering and the devastating consequences that illnesses have on families as well as on the health-care system.

Foreseeability, knowledge of the dangers inherent in the asbestos-containing components here, is imputed to defendants. See Beshada, 90 N.J. at 202 (quoting Freund, 87 N.J. at 239 ("[W]hen a plaintiff sues under strict liability, there is no need to prove that the manufacturer knew or should have known of any dangerous propensities of its product -- such knowledge is imputed to the manufacturer.")).

The risks inherent in a product containing asbestos components can "be reduced to the greatest extent possible without hindering its utility" with the attachment of proper warnings. See id. at 201. "Experience demonstrates that an asbestos-related product is unsafe because a warning could have made it safer at virtually no added cost and without limiting its utility." Becker, 138 N.J. at 166 (quoting Campolongo v. Celotex Corp., 681 F. Supp. 261, 264 (D.N.J. 1988)). Last, considering that asbestos-related illnesses are borne by workers and their families, manufacturers are generally in the best position to

34

"spread the cost of losses caused by [their] dangerous products." See Fischer, 103 N.J. at 657; Beshada, 90 N.J. at 205-06.

Given the summary-judgment record before us, we conclude that imposing liability on a manufacturer or distributor of a product for failing to provide adequate warnings about the danger of incorporating required asbestos-containing replacement components into the product during routine maintenance "satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." See Hopkins, 132 N.J. at 439. The manufacturer or distributor knows that the product's profitability depends on the length of the product's useful life and that the availability of replacement components is inextricably related to the product's continued functioning and overall value. See In re N.Y.C. Asbestos Litig., 59 N.E.3d 458, 474-75 (N.Y. 2016). Here, the products were dependent on asbestos-containing replacement parts, whether manufactured or distributed by defendants or third parties. That is the way the products were designed. Defendants had a duty to provide warnings given the foreseeability that third parties would be the source of asbestos-containing replacement components. Warnings on defendants' products would have provided a reliable form of protection for the ultimate user. See id. at 472. The lack of warnings rendered the products defective.

35

D.

Other jurisdictions have reached the same conclusion in similar scenarios.

In <u>New York City Asbestos Litigation</u>, the New York Court of Appeals addressed a manufacturer's duty to warn when its product is combined with a third party's asbestos-containing component. <u>Id.</u> at 463. The New York high court held that a product manufacturer "has a duty to warn of the danger arising from the known and reasonably foreseeable use of its product in combination with a third-party product which, as a matter of design, mechanics or economic necessity, is necessary to enable the manufacturer's product to function as intended." <u>Id.</u> at 463. The Court of Appeals came to that determination for a number of reasons, a few of which bear mentioning. The product manufacturer (1) "has the knowledge and ability to warn of the dangers of the joint use of the products, especially if the other company's product is a 'wear item,'" <u>id.</u> at 472; (2) "derives a benefit from the sale of the essential third-party [component part]" because the component part is necessary for the product's function and its ultimate sale, <u>id.</u> at 474; and (3) "typically is in the best position to guarantee that those who use the two products together will receive a warning" because "the end user is more likely to interact with [its product]," <u>id.</u> at 472. Thus, the Court of Appeals

36

concluded that "it would be unfair to allow a manufacturer to avoid the minimal cost of including a warning about the perils of the joint use of the products when the manufacturer knows that the combined use is both necessary and dangerous." Id. at 474.

The United States Supreme Court reached a similar conclusion in exercising its authority as a federal "common-law court" in a negligence-based, product-liability maritime tort case. See DeVries, 139 S. Ct. at 991. In DeVries, the Supreme Court held that a manufacturer has "a duty to warn when its product requires incorporation of a part and the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses." Id. at 993-94. In reaching that determination, the Court emphasized that "the product manufacturer will often be in a better position than the parts manufacturer to warn of the danger from the integrated product." Id. at 994. Additionally, the Court reasoned that because "[m]anufacturers already have a duty to warn of the dangers of their own products," requiring those manufacturers to also warn that the "required later-added part is likely to make the integrated product dangerous for its intended uses should not meaningfully add to that burden." Id. at 994-95.[10]

---

[10] The Court limited its holding to the maritime context. DeVries, 139 S. Ct. at 995.

37

Similarly, the Maryland Court of Appeals rejected the argument that strict liability could not be imposed on a pipe manufacturer for failing to warn of the dangers of later-installed third-party asbestos-containing components necessary for the defendant's pipes to function. May v. Air & Liquid Sys. Corp., 129 A.3d 984, 998 (Md. 2015). The Maryland high court imposed on a manufacturer a strict-liability duty to warn of the dangers of a third party's asbestos-containing replacement components, provided:

> (1) [the manufacturer's] product contains asbestos components, and no safer material is available;
>
> (2) asbestos is a critical part of the pump sold by the manufacturer;
>
> (3) periodic maintenance involving handling asbestos gaskets and packing is required; and
>
> (4) the manufacturer knows or should know of the risks from exposure to asbestos.
>
> [Ibid.]

### E.

To be sure, other jurisdictions have reached different conclusions, finding that a manufacturer does not owe a duty to warn of a third party's asbestos-containing replacement components later integrated into its product. See e.g., Braaten v. Saberhagen Holdings, 198 P.3d 493, 504 (Wash. 2008) (holding that "a manufacturer has no duty . . . to warn of the dangers of

38

exposure to asbestos in products it did not manufacture and for which the manufacturer was not in the chain of distribution"); Davis v. John Crane, Inc., 836 S.E.2d 577, 584 (Ga. 2019) (same). California takes a modified approach. See O'Neil v. Crane Co., 266 P.3d 987, 991 (Cal. 2012) (holding "that a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products" (emphasis added)). We conclude, however, that our evolving common law jurisprudence in the field of failure-to-warn, strict-liability cases involving asbestos-containing products leads to a result that aligns with similar decisions rendered by the United States Supreme Court, the New York Court of Appeals, and the Maryland Court of Appeals.

In summary, imposing a duty to warn about the dangers of asbestos-containing replacement components, regardless of who manufactured those components, adds hardly any further burden or cost to the product manufacturers, who already have a duty to warn of the dangers of the original asbestos-containing components. The manufacturers are in the best position to know the useful life -- the wear and tear -- of the asbestos-containing components in the product in which they operate, and the user of the product is

39

likely to be more alert to a warning on the product than one that comes with the component part. It is only fair that the defendant manufacturers, who profit because the replacement components extend the life of their products, bear and spread the cost of the harm they caused. That is not to say that the third-party manufacturers of asbestos-containing replacement components do not have an equivalent duty to warn of the dangers of their products. But component-part manufacturers are not defendants or third-party defendants in this action.

V.

Despite the dissent's suggestion otherwise, this opinion represents nothing more than a reasonable and logical extension of our evolving common law jurisprudence in asbestos cases. See post at ___ (slip op. at 5). This Court is not breaching any of its precedents, but merely resolving a case of first impression that comes to us from conflicting decisions of panels in the Appellate Division. Our asbestos-related jurisprudence has not been static, as is evident from decisions ranging from Beshada to Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 404-05 (2006), where we held that a defendant's "duty to workers on its premises for the foreseeable risk of exposure" to asbestos similarly extends "to spouses handling the workers' unprotected work clothing based on the foreseeable risk of exposure." "One of the great virtues of the

40

common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application . . . ." State v. Culver, 23 N.J. 495, 505 (1957).  The approach we take here is the same modest one advanced by the United States Supreme Court, the New York Court of Appeals, and the Maryland Court of Appeals.

Like the Hughes court, the dissent takes the position that the product is one thing for product-causation and adequate-warning purposes (defendants' products and asbestos-containing component parts) and another thing for medical-causation purposes (asbestos-containing component parts required for the product to function).  We reject that approach, as have other courts cited in this opinion.

Contrary to the dissent's assertion, this opinion does not alter in any way the requirement for proving medical causation related to defendants' products, including the required asbestos-containing replacement components that are integral to the functioning of those products.  Whelan must establish that exposure to the asbestos-causing replacement component was of "'sufficient frequency, with a regularity of contact, and with the product in close proximity' to the plaintiff," James, 155 N.J. at 301 (quoting Sholtis, 238 N.J. Super. at 28), and that the exposure "was a substantial factor in causing or

41

exacerbating [his] disease," id. at 299 (quoting Sholtis, 238 N.J. Super. at 30-31).

In addition, plaintiffs still have a strong incentive to identify asbestos-containing component manufacturers, if they can, because those manufacturers are another source for the payment of damages. In turn, defendants have an incentive to identify asbestos-component manufacturers to share in bearing the cost of damages. To be sure, plaintiffs are not entitled to double recoveries.

## VI.

We affirm the judgment of the Appellate Division, for many of the reasons set forth in its thoughtful and comprehensive opinion reversing the order granting summary judgment in favor of defendants. As a matter of law, we hold that defendant manufacturers and distributors can be found strictly liable for the failure to warn of the dangers of their products, including their own asbestos-containing components and a third party's replacement components. To succeed in his failure to warn action, Whelan must prove that (1) the manufacturer or distributor incorporated asbestos-containing components in its original product; (2) the asbestos-containing components were integral to the product and necessary for it to function; (3) routine maintenance of the product required replacing the original asbestos-containing components with similar asbestos-containing components; and

42

(4) the exposure to the asbestos-containing components or replacement components was a substantial factor in causing or exacerbating Whelan's disease.

The facts in dispute must be resolved by a jury. We remand to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON filed a dissent, in which JUSTICE FERNANDEZ-VINA joins.

Arthur G. Whelan,

Plaintiff-Respondent,

v.

Armstrong International Inc.;
Burnham LLC; Carrier Corp., individually,
d/b/a and as successor to Bryant
Heating & Cooling Systems; Cleaver-
Brooks Inc.; Crown Boiler Co., f/k/a
Crown Industries Inc.; Ford Motor Co.;
Johnson Controls Inc., individually,
d/b/a and as successor to
Evcon Industries Inc. and Coleman
Heating and Air Conditioning
Products, Inc.; NIBCO Inc.,

Defendants-Appellants,

and

A.O. Smith Corp.; Aaron & Co.;
AMG Industries Inc., d/b/a and as
successor to Akron Metallic Gasket
Co.; Automatic Switch Co.; Automotive
Brake Co.; A.W. Chesterton Co.; BASF
Corp.; Bergen Industrial Supply Co.;
Bethlehem Dynatherm, a/k/a Dynatherm
Boiler Manufacturing Inc.; Binsky &
Snyder LLC, individually, d/b/a and
as successor to Binsky & Snyder Co.;
Bonland Industries Inc.; BorgWarner
Morse Tec Inc., as successor to
Borg-Warner Corp.; Briggs Industries Inc.;
Carlisle Companies Inc.; CBS Corp.,
f/k/a Viacom Inc., successor by
merger to CBS Corp., f/k/a

Westinghouse Electric Corp.; Central Brass Co. Inc., individually, d/b/a and as successor to Central Brass Manufacturing Co. and Central Brass & Fixture Co.; Central Engineering & Supply Co. Inc.; Chicago Faucet Co.; Chicago-Wilcox Manufacturing Co. Inc.; Colfax Inc., individually and as successor to Warner Electric Brake & Clutch Co.; Crane Co.; Crosstown Plumbing Supply Inc.; Dana Companies LLC; DAP Inc.; Ductmate Industries Inc.; Dunham-Bush Inc.; Dunphey & Associates Supply Co. Inc.; Duro Dyne Corp.; ECR International Inc., individually, d/b/a and as successor to Utica Boilers Inc., Utica Radiator Corp., Dunkirk Boilers, Pennco Inc., and Olsen Technology Inc.; Essex Plumbing Supply Inc.; Fisher Scientific International Inc.; Fortune Brands Home & Security Inc., individually, d/b/a and as successor to Moen Inc.; Foster Wheeler LLC; General Electric Co.; Georgia-Pacific LLC; The Goodyear Tire & Rubber Co.; Goulds Pumps Inc.; Graco Inc.; Grundfos Pumps Corp.; H.B. Smith Co. Inc.; Hilco Inc., individually and as successor to Universal Supply Group Inc. and Amber Supply Co.; Honeywell International Inc., f/k/a Honeywell Inc., Allied Signal Inc. and Bendix Corp.; Interline Brands Inc., individually, d/b/a and as successor to J.A. Sexauer Inc.; International Business Machines Corp.; ITT Corp.; Kaiser Gypsum Co. Inc.; Kantor Supply Inc.; Kohler Co., individually, d/b/a

and as successor to Sterling Faucet Co.; Lennox Industries Inc., individually, d/b/a and as successor to Armstrong Furnace Co.; Magnatrol Valve Corp.; Manhattan Welding Co. Inc.; Maremont Corp.; Meritor Inc., individually and as successor to Rockwell International Corp.; Mestek Inc., individually, d/b/a and as successor to H.B. Smith Co., Smith Cast Iron Boilers and Mills Boilers; Mueller Industries Inc.; National Automotive Parts Association Inc.; New Jersey Boiler Repair Co.; NCH Corp., as successor to Creed Co. and Daniel P. Creed Co. Inc.; NMBFIL Inc., f/k/a Bondo Corp.; Owens-Illinois Inc.; Peerless Industries Inc.; Pneumo-Abex LLC, individually and as successor to Abex Corp.; Price Pfister Inc.; The Prudential Insurance Co. of America; Rheem Manufacturing Co.; Riley Power Inc., f/k/a Riley-Stoker Corp.; Robertshaw Controls Co., individually and as successor to Fulton Sylphon Co.; Sid Harvey Industries Inc.; Slant/Fin Corp.; Sloan Valve Co.; SOS Products Co. Inc.; Speakman Co.; Superior Boiler Works Inc.; Sur-Seal Corp.; Taco Inc.; Trane U.S. Inc., individually and as successor to American Standard Inc. and American Radiator Co.; Turner Construction Co.; Unilever United States Inc.; Uniroyal Holding Inc.; Verizon New Jersey Inc., individually and as successor to New Jersey Bell Telephone Co.; Victaulic Co.;

Wallwork Bros. Inc.; Wal-Rich Corp.;
Weil-McLain, a division of the
Marley-Wylain Co., a wholly-owned
subsidiary of the Marley Co. LLC;
W.V. Egbert & Co. Inc.; York
International Corp.; Zurn Industries
LLC, individually, d/b/a and as
successor to Erie City Iron Works and
Zurn Industries Inc.; AII Acquisition
LLC, individually, as successor to,
f/k/a, and d/b/a Holland Furnace Co.,
Athlone Industries Inc., T.F.C.
Holding Corp. and Thatcher Furnace
Co.; American Premier Underwriters,
individually and as successor to
Hydrotherm Corp.; August Arace & Sons
Inc.; Honeywell Inc.; Rockwell
Automation Inc., individually, d/b/a
and as successor to Sterling Faucet
Co.; Rockwell Collins Inc.,
individually, d/b/a and as successor
to Sterling Faucet Co.; TriMas Corp.,
individually, d/b/a and as successor
to NI Industries Inc.; Wilmar
Industries Inc., individually, d/b/a
and as successor to J.A. Sexauer Inc.;
BASF Catalysts LLC; TriMas
Corp., individually and as successor
in interest to Norris Industries
and/or NI Industries Inc.; York
International Corp., individually and
as successor to The Coleman Company
Inc., a/k/a Coleman Heating and Air
Conditioning Products Inc.,

Defendants.

JUSTICE PATTERSON, dissenting.

4

This Court has long declined to "'lightly alter one of [its] rulings' because consistent jurisprudence 'provides stability and certainty to the law.'" Bisbing v. Bisbing, 230 N.J. 309, 328 (2017) (quoting Pinto v. Spectrum Chems. & Lab. Prods., 200 N.J. 580, 598 (2010)). "Stare decisis 'carries such persuasive force that we have always required a departure from precedent to be supported by some special justification,'" Luchejko v. City of Hoboken, 207 N.J. 191, 208 (2011) (quoting State v. Brown, 190 N.J. 144, 157 (2007)), such as "when experience teaches that a rule of law has not achieved its intended result," Pinto, 200 N.J. at 598.

In today's decision, the majority substantially alters the test for medical causation that has governed our state's asbestos litigation for decades. The majority does not base its revision of the standard on any showing that the existing rule deprives asbestos plaintiffs of a remedy. Indeed, the specific issue addressed in this appeal has been raised in only two published decisions -- one of them the Appellate Division's decision in this very case -- among the tens of thousands of asbestos claims that our courts have handled over generations. See Whelan v. Armstrong Int'l Inc., 455 N.J. Super. 569, 596-97 (App. Div. 2018); Hughes v. A.W. Chesterton Co., 435 N.J. Super. 326, 338, 343-46 (App Div. 2014). Moreover, even in this matter, there is no dispute that plaintiff Arthur Whelan can seek to recover against some of the many

5

defendants named in this action under the law that has governed until today. There is no flaw in our product liability law demanding the change that the majority makes, much less a special justification warranting a departure from precedent.

I view the majority opinion to erode the core element of a plaintiff's burden of proof in an asbestos case, to unfairly impose upon defendants liability premised on products that they neither manufactured nor sold, and to discourage the product-identification discovery that ordinarily leads to an equitable allocation of fault. Accordingly, I respectfully dissent.

## I.

## A.

Over forty years of jurisprudence, this Court has acted to remove significant barriers facing asbestos plaintiffs. Based in part on its judgment that trial proofs should be simplified, the Court held that plaintiffs in asbestos cases need not demonstrate that the defendant had actual or constructive knowledge of a product's dangers at the time of manufacture. Beshada v. Johns-Manville Prods. Corp., 90 N.J. 191, 207-09 (1982). In aggregated cases overseen by experienced judges, asbestos litigants are afforded broad product-identification discovery, given access to proofs from cases around the country, and allowed to amend their pleadings to pursue claims against a vast array of

6

manufacturers and distributors of asbestos-containing products.  In many settings in which the corporate entity that manufactured the product is unavailable to satisfy a judgment, asbestos plaintiffs may sue successor entities under the expansive "product line" test for successor liability adopted by this Court in Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 343-47 (1981) and Nieves v. Bruno Sherman Corp., 86 N.J. 361, 368-70 (1981).  In those and other respects, this Court has acted to ease the burden on asbestos plaintiffs as they seek to prove their claims at trial.

With respect to the critical element of causation in the toxic-tort setting, however, this Court and the Appellate Division have sought to strike a careful balance between the interests of plaintiffs and those of defendants.  Our courts have established a two-part test for causation in a toxic-tort claim based on an alleged failure to warn.

First, a plaintiff must establish "product-defect causation" -- that the product "was defective for some reason, the reason in occupational exposure cases usually being failure to warn, and that the defect caused harm."  Dreier, Karg, Keefe & Katz, Current N.J. Products Liability and Toxic Tort Law § 33:3 (2020).  By virtue of the "heeding presumption" imposed by this Court in plaintiff's favor in Coffman v. Keene Corp., 133 N.J. 581, 597-603 (1993), the burden imposed on plaintiffs to prove product-defect causation in a failure

7

to warn claim is "not an onerous one," <u>James v. Bessemer Processing Co.</u>, 155 N.J. 279, 297 (1998).

Second, "a plaintiff must prove what is known as 'medical causation' -- that the plaintiff's injuries were proximately caused by exposure to the defendant's product." <u>Id.</u> at 299. That second component of the causation requirement is at the center of this appeal.

The "medical causation" requirement was adopted by the Appellate Division in the asbestos setting in <u>Sholtis v. American Cyanamid Co.</u>, 238 N.J. Super. 8, 25-31 (App. Div. 1989), and by this Court in toxic-tort cases generally in <u>James</u>, 155 N.J. at 299-304. First in <u>Sholtis</u> and then in <u>James</u>, the courts grappled to address the "extraordinary and unique burdens facing plaintiffs who seek to prove causation in toxic-tort litigation," <u>James</u>, 155 N.J. at 299 (quoting <u>Rubanick v. Witco Chem. Corp.</u>, 125 N.J. 421, 433 (1991)), in a manner that was also fair to defendants. In both cases, the courts adopted a test of proximate cause that eased the plaintiff's burden, but strictly limited liability to those defendants whose products actually contributed to the plaintiffs' harm. <u>Id.</u> at 299-304; <u>Sholtis</u>, 238 N.J. Super. at 28-31.

Rejecting market-share and other collective-liability theories for asbestos cases, the Appellate Division adopted in <u>Sholtis</u> the "frequency, regularity and proximity" test, which requires that "a plaintiff prove an

8

exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity."  238 N.J. Super. at 28.  The Appellate Division viewed that standard to strike a "fair balance between the needs of plaintiffs (recognizing the difficulty of proving contact) and defendants (protecting against liability predicated on guesswork)."  Id. at 29.  Under that test, to defeat summary judgment, "a plaintiff only need produce evidence from which a fact-finder, after assessing the proof of frequency and intensity of plaintiff's contacts with a particular manufacturer's friable asbestos, could reasonably infer toxic exposure."  Ibid.

In James, the Court observed that the Sholtis test "is not a rigid test with an absolute threshold level necessary to support a jury verdict."  James, 155 N.J. at 302 (quoting Tragarz v. Keene Corp., 980 F.2d 411, 420 (7th Cir. 1992)).  Nonetheless, the Court expressly mandated that plaintiffs prove exposure to a product manufactured by the defendant against which the plaintiff sought to recover:

> We stress that the "frequency, regularity and proximity" test bears no relationship to theories of collective liability that some courts have adopted in contexts where the specific tortfeasor or tortfeasors that caused the plaintiff's injury cannot be identified.  The "frequency, regularity and proximity" test assigns liability only to those defendants to whose products the plaintiff can demonstrate he or she was intensely exposed.

9

[Id. at 302-03.]

The Court found in James that the plaintiff presented the required proofs specific to each defendant manufacturer, noting that the plaintiff had "provided substantial evidence that James was frequently, regularly and proximately exposed to petroleum-based products of each of the petroleum defendants." Id. at 305. It thus upheld a fundamental requirement imposed on plaintiffs seeking to defeat a given defendant's summary judgment motion: a prima facie showing of sufficient intensity of exposure to that specific defendant's product -- as contrasted with another manufacturer's product or a generic class of toxic exposures -- to support a finding of proximate cause by a reasonable jury. Id. at 302-06.

That defendant-specific requirement has been routinely imposed in the asbestos litigation. See, e.g., Estate of Brust v. ACF Indus., LLC, 443 N.J. Super. 103, 125 (App. Div. 2015) (requiring proof, assessed under the test of Sholtis and James, that the plaintiff's "exposure to the defendant's asbestos products was a 'substantial factor' in causing the disease"); Provini v. Asbestospray Corp., 360 N.J. Super. 234, 238 (App. Div. 2003) (holding that the evidence presented by the plaintiff fell short of the required "proof of frequency and intensity of plaintiff's contacts with a particular manufacturer's friable asbestos"); Kurak v. A.P. Green Refractories Co., 298 N.J. Super. 304,

10

314, 322 (App. Div. 1997) (holding that the plaintiffs' product-identification and causation evidence was insufficient to defeat summary judgment as to one defendant but finding, as to another defendant, that the evidence established that the plaintiffs were exposed to that defendant's asbestos product in "close proximity, with regularity, and frequency"); Goss v. Am. Cyanamid Co., 278 N.J. Super. 227, 236-37 (App. Div. 1994) (noting the plaintiffs' burden to show "not only that Porter Hayden's asbestos-containing products were used at American Cyanamid, but also that each of them [was] exposed to the asbestos from those specific products frequently, on a regular basis, and with sufficient proximity so as to demonstrate the requisite causal connection between the exposure and plaintiffs' illnesses").

The requirement that a plaintiff identify the relevant asbestos-containing products and their manufacturers and establish proof of sufficient exposure to a specific defendant's product is not a matter of semantics. Notwithstanding our courts' longstanding commitment to eliminating procedural obstacles facing asbestos plaintiffs, New Jersey has never adopted "theories of collective liability" or other alternative forms of proof as a substitute for product identification in cases such as this. James, 155 N.J. at 302. As leading commentators on product liability law have observed, "Sholtis is distinguishable from various collective liability theories that have been

11

rejected by New Jersey courts . . . and only assigns liability to those defendants to whose products plaintiff can demonstrate he was intensely exposed." Dreier, Karg, Keefe & Katz, § 33:3. Instead, recognizing that not every plaintiff will be able to prove the liability of every defendant against whom he or she seeks to recover, our courts have mandated that plaintiffs identify the asbestos-containing product, sue the responsible manufacturer or its successor, and meet the modest burden imposed by the test of Sholtis and James. James, 155 N.J. at 299-304; Sholtis, 238 N.J. Super. at 28-31.

B.

The medical-causation standard of Sholtis and James was the foundation for the court's reasoning in Hughes, 435 N.J. Super. at 337-38, 343-46. Hughes arose from four plaintiffs' occupational exposure to pumps manufactured by defendant Goulds Pumps, Inc., the majority of which, "until 1985[,] contained asbestos in their gaskets and packing." Id. at 332. It was undisputed that during the period in which the plaintiffs were exposed to the Goulds pumps, "the original gaskets and packing had been replaced, and it is unknown who manufactured or supplied the replacement gaskets and packing." Ibid.

Goulds moved for summary judgment, asserting that the plaintiffs had failed to produce evidence that they were exposed to asbestos-containing

12

products manufactured by Goulds, "let alone with frequency, regularity and proximity" sufficient to prove medical causation under Sholtis. Id. at 333.

On appeal from the trial court's grant of summary judgment in favor of Goulds, the Appellate Division held that, with no non-asbestos gaskets and packing available on the market, "it was reasonably foreseeable, at the time the pumps were placed into the marketplace, that the gaskets and packing would be replaced regularly with gaskets and packing that contained asbestos." Id. at 341. The court concluded that "it would be reasonable, practical, and feasible to impose a duty to warn upon Goulds under the facts here." Id. at 343.

The Appellate Division then turned to the separate question of medical causation, noting that proof of causation is "the most difficult problem for plaintiffs in toxic tort cases." Ibid. Applying the medical-causation standard of Sholtis and James, the Appellate Division held that "[i]ndustry should not be saddled with . . . open-ended exposure based upon 'a casual or minimum contact.'" Id. at 345 (ellipsis in original) (quoting Sholtis, 238 N.J. Super. at 29). The court rejected the Hughes plaintiffs' contention that liability for the unknown manufacturers' replacement gaskets and packing could be predicated solely on their contact with Goulds pumps. Id. at 345-46. The Appellate Division recognized the distinction between the elements of breach of a duty to

13

warn and medical causation, holding that a finding in plaintiffs' favor in the former does not obviate the need for plaintiffs to prove the latter:

> We do not agree that plaintiffs may prove causation by showing exposure to a product without also showing exposure to an injury-producing element in the product that was manufactured or sold by defendant. If that were the case, a manufacturer or seller who failed to give a warning could be strictly liable for alleged injuries long after the product entered the marketplace even if the injury-producing element of the product no longer existed. The imposition of liability based upon such proofs would rest upon no more than mere guesswork, and would fail to limit liability "only to those defendants to whose products the plaintiff can demonstrate he or she was intensely exposed."
>
> [Id. at 346 (quoting James, 155 N.J. at 302-03) (citing Provini, 360 N.J. Super. at 238).]

The Appellate Division accordingly affirmed the grant of summary judgment in favor of defendant Goulds. Ibid.

As it expanded a manufacturer's duty to warn to encompass the dangers of required or reasonably foreseeable substitution of replacement asbestos-containing component parts for the originals, the Appellate Division in Hughes faithfully applied the test of Sholtis and James. Id. at 344-46. The court acknowledged that New Jersey's standard of medical causation in asbestos failure-to-warn cases -- a standard widely recognized to be among the nation's most hospitable to the claims of injured plaintiffs -- nonetheless imposes on those plaintiffs the obligation to prove sufficient exposure to a specific

14

defendant's products in order for liability to be imposed on that defendant.
Ibid.

C.

In the Appellate Division decision affirmed today, the panel concurred with the Hughes panel with respect to the scope of a manufacturer's duty to warn of hazards associated with asbestos-containing replacement parts. Whelan, 455 N.J. Super. at 596-97. The Whelan panel, however, "part[ed] ways and disagree[d] with" the Hughes panel's analysis of the question of medical causation. Id. at 597.

In Whelan, the panel acknowledged that "our courts assess a manufacturer's liability for a defective product by the condition of the product when it left the manufacturer's control." Ibid. (citing Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 400 (1982)). Notwithstanding that fundamental tenet of New Jersey product liability law, the court concluded that the original manufacturer should be held liable for the dangers posed by replacement parts made by unidentified nonparties, based on the failure of those replacement parts to eliminate the dangers of the original product:

> A defect that existed when the product left the manufacturer's control is neither ameliorated nor diminished when it arises from a component that has been replaced with a component that contains the identical injury-producing element. That well-established principle governs our definition of a

15

product for purposes of determining a manufacturer's liability for an asbestos-containing replacement part.

[Id. at 604.]

The panel supported its expanded definition of a manufacturer's "product" to include replacement parts not made by that manufacturer -- indeed, most likely unknown to it -- by analogizing the post-sale replacement of the manufacturer's component part with another asbestos-containing component part to the "foreseeable misuse" of a product that in certain settings gives rise to liability. Id. at 598-99 (citing Jurado v. W. Gear Works, 131 N.J. 375, 386 (1993); Brown v. U.S. Stove Co., 98 N.J. 155, 169 (1984); Lewis v. Am. Cyanamid Co., 294 N.J. Super. 53, 68 (App. Div. 1996), aff'd in part, modified in part, 155 N.J. 544 (1998)).

The Whelan court altered the test of Sholtis and James to eliminate the requirement that the plaintiff prove sufficient exposure to an asbestos-containing product manufactured by the specific defendant. Whelan, 455 N.J. Super. at 604-05. It reformulated that test to require that the factfinder assess whether there is an inference of toxic exposure based on "proof of frequency and intensity of plaintiff's contacts with a particular manufacturer's asbestos-containing product, including all necessary component or replacement parts" -- despite the fact that the specific defendant did not manufacture or sell those component or replacement parts. Id. at 604-05 (emphasis added). Noting that

16

the "[p]laintiff must also show his or her exposure was more than casual or minimal" and demonstrate the presence of asbestos-containing component parts and the plaintiff's use of asbestos-containing replacement parts, the Whelan panel was satisfied that its "ruling . . . remains consistent with the proofs required under Sholtis and James." Id. at 605. It reversed the trial court's grant of summary judgment in favor of the defendant manufacturers. Id. at 607-08.

## II.

### A.

Affirming the decision of the Appellate Division panel, the majority focused its analysis on the scope of the duty to warn. Ante at ___ (slip op. at 22-29, 31-35). As did the Appellate Division panels in Hughes and Whelan, the majority imposed on the manufacturer of products with asbestos-containing component parts integral to the product and necessary to its function, which must be replaced during routine maintenance, a duty to warn about the dangers of the replacement parts. Ante at ___ (slip op. at 42-43). On the question of the duty to warn, the majority relied in part on several cases from other jurisdictions recognizing a duty in similar settings and declined to follow cases reaching a contrary result. Ante at ___ (slip op. at 36-40).

17

The majority addressed the question of medical causation only briefly. Rejecting the holding of the Appellate Division in <u>Hughes</u> that the plaintiff could not meet the medical-causation test of <u>Sholtis</u> and <u>James</u>, the majority declined to "accept the legal theory advanced in <u>Hughes</u> that a duty to warn, once recognized, has no real consequences -- that a violation of the duty is essentially meaningless." <u>Ante</u> at ___ (slip op. at 31).

The majority thus rejects the holding of <u>Hughes</u> for a single reason: the Appellate Division adhered in <u>Hughes</u> to the requirement of <u>Sholtis</u> and <u>James</u> that the plaintiff in that case prove contact with friable asbestos in replacement parts manufactured by the defendant. <u>Ante</u> at ___ (slip op. at 31-32) (citing <u>Hughes</u>, 435 N.J. Super. at 346). The majority reformulates the medical causation standard to require proof only that "the exposure to the asbestos-containing components or replacement components was a substantial factor in causing or exacerbating Whelan's disease." <u>Ante</u> at ___ (slip op. at 42-43). That represents a material departure from the holding of <u>James</u>, in which the Court eased the plaintiff's burden of proof but expressly declined to hold one defendant responsible for harm caused by a product that it neither manufactured nor sold. <u>James</u>, 155 N.J. at 302-04; <u>Sholtis</u>, 238 N.J. Super. at 28-31. Although the majority contends that it "does not alter in any way the requirement for proving medical causation related to defendants' products,"

18

ante at \_\_\_ (slip op. at 42), its very explanation reveals that it does exactly that. The majority redefines "defendants' products" to include "the required asbestos-containing replacement components that are integral to the functioning of those products," thus attributing to a given defendant a product that a different entity manufactured.

Significantly, the majority's new standard requires no showing that the plaintiff has made the slightest attempt to identify the proper defendant. Ante at \_\_\_ (slip op. at 31-32, 42-43). Instead, it disincentivizes litigants from undertaking the product-identification discovery -- long routine in asbestos litigation -- that could reveal the identity of the replacement part's actual manufacturer. The standard raises the specter of duplicative liability for the identical exposure, given the majority's suggestion that "the third-party manufacturers of asbestos-containing replacement components" have a duty to warn "equivalent" to that imposed on the original product's manufacturer. Ante at \_\_\_ (slip op. at 40). The majority, in short, has not demonstrated that its new standard provides a fair and workable rule.

B.

In New Jersey asbestos litigation, as in product liability cases generally, this Court has on occasion amended the common law when it perceived a fundamental imbalance between the rights of plaintiffs and defendants that

19

prevents a fair adjudication of the claims. See, e.g., Coffman, 133 N.J. at 597-603 (identifying trial fairness and other reasons for imposing a heeding presumption in an asbestos failure-to-warn claim); Beshada, 90 N.J. at 207-08 (stating that the requirement that plaintiffs prove the defendant's knowledge of the asbestos hazard imposed substantial obstacles to a fair trial).

No such fundamental unfairness is suggested -- much less demonstrated -- with respect to the issue here. In the decades in which the medical causation standard of Sholtis and James has governed, the skilled and seasoned judges and lawyers involved in the asbestos litigation have resolved tens of thousands of cases by settlement and trial. Apart from Hughes and this appeal, the parties have identified no matter in which a plaintiff claimed that his or her remedy against the manufacturers of asbestos products was inadequate because the existing medical causation standard required proof of exposure to a specific defendant's product. Four decades into the asbestos litigation, there is nothing to justify the majority's realignment of the interests of plaintiffs and defendants.

I respectfully disagree with the majority's suggestion that if a duty to warn is imposed, but a plaintiff cannot meet the requirement of proving causation as to a given exposure and thus cannot recover based on that discrete exposure, an injustice has somehow occurred. See ante at ___ (slip op. at 31-

20

32). Proximate cause, consisting of product-defect causation and medical causation, constitutes a separate element of a toxic-tort plaintiff's burden, distinct from the breach of a duty to warn. That element is not satisfied whenever a court recognizes a duty; to the contrary, it requires "(1) factual proof of the plaintiff's frequent, regular and proximate exposure to a defendant's products; and (2) medical and/or scientific proof of a nexus between the exposure and the plaintiff's condition." James, 155 N.J. at 304. It is that test -- not the policy considerations that drive a duty analysis -- that has long served as a fair and practical standard of medical causation.

In my view, there is no wrong to be righted here. I consider the majority's decision to effect an unwarranted change in the longstanding standard for the medical causation element of an asbestos failure to warn claim. I would reverse the judgment of the Appellate Division, and I respectfully dissent.